1  GENE A. FARBER, ESQ. (No. 44215)
   LAW OFFICES OF GENE A. FARBER
2  P.O. Box 6082
   San Rafael, CA 94903
3  (415) 956-1800
   (415) 282-4258 Fax
4  Genefarber@gmail.com

5  TIMOTHY S. THIMESCH (No. 148213)
   THIMESCH LAW OFFICE, PLC
6  4413 Prairie Willow Ct.
   Concord, CA 94521-4440
7  (925) 588-0401
   (888) 210-8868
8  tim@thimeschlaw.com

9  Attorneys for Plaintiff KEITH TROUT, as the
   proposed guardian ad litem of minor DA;
10 minor JG1; minor JG2; and minor JG3

11              U.S. DISTRICT COURT
           EASTERN DISTRICT OF CALIFORNIA
12                 Fresno Division

13 KEITH TROUT, as the proposed guardian ad      Case No. _____
   litem of minor DA; minor JG1; minor JG2;      Civil Rights
14 and minor JG3,
                                                 **COMPLAINT FOR INJUNCTIVE**
15       Plaintiff,                              **RELIEF, DECLARATORY RELIEF,**
                                                 **AND DAMAGES:**
16 vs.                                           Constitutional Violations; Negligence;
                                                 Wrongful Death; Privacy Violation;
17 COUNTY OF MADERA; COMMUNITY                   Survivorship; Fraudulent Conveyance.
   ACTION PARTNERSHIP OF MADERA
18 COUNTY, INC.; MARTHA DIAZ                     **DEMAND FOR JURY TRIAL**
   SHELTER; CAMARENA HEALTH;
19 CAMARENA HEALTH FOUNDATION;
   LORENA BLANCO ELENEZ; DEBORAH
20 MARTINEZ; MICHELLE BAAS; KIM
   JOHNSON; DANNY MORRIS; SARA
21 BOSSE; MATTIE MENDEZ; BRONCO
   PROFESSIONAL PARK, LLC; BRONCO
22 PROFESSIONAL PARK OWNERS
   ASSOCIATION; ROSE ALVARADO;
23 JULIO L. GARAY, SR.; JULIO J. GARAY,
   JR.; AMANDA M. GARAY; and DOES 1
24 through 90, Inclusive.

25       Defendants.                        /

26 _____

27    COMES NOW Plaintiff KEITH TROUT, the maternal grandfather and proposed guardian ad

28 litem of minor DA; minor JG1; minor JG2; and minor JG3 (and pursuant the extension of time to

file this provisional Complaint, with rights of review pending in the parallel action Trout v. County of Madera, U.S. District Court for the Northern District of California, Case No. 4:21-cv-06061-PJH, and sues:

(1)    COUNTY OF MADERA ("COUNTY"), a municipal corporation.

(2)    COMMUNITY ACTION PARTNERSHIP OF MADERA COUNTY, INC., a domestic corporation ("CAPMC").

(3)    MARTHA DIAZ SHELTER ("SHELTER"), a business entity, form unknown, doing business as the Martha Diaz Shelter, and named under Cal. Civil Proc. Sec. 369.5.

(4)    CAMARENA HEALTH ("CAMARENA"), a domestic corporation.

(5)    CAMARENA HEALTH FOUNDATION ("FOUNDATION"), a domestic corporation.

(6)    LORENA BLANCO ELENEZ ("ELENEZ"), also known as Lorena Blanco, Lorena Elenez, Lorena Valdez Elenez, and Lorena Elenes Valdez, an individual.

(7)    DEBORAH MARTINEZ ("MARTINEZ"), as director of the County of Madera Department of Social Services.

(8)    MICHELLE BAAS ("BAAS"), as Director of the Department of Health Care Services of the State of California.

(9)    KIM JOHNSON ("JOHNSON"), as the Director of the Calif. Dept. of Social Services.

(10)   DANNY MORRIS ("MORRIS"), as an individual and as deputy director of the County of Madera Department of Social Services.

(11)   SARA BOSSE, as an individual and as the Public Health Director of the Madera County Dept. of Public Health.

(12)   MATTIE MENDEZ, as an individual and acting as the executive director of the CAPMC ("MENDEZ").

(13)   BRONCO PROFESSIONAL PARK, LLC, a domestic limited liability corporation ("BRONCO").

(14)   BRONCO PROFESSIONAL PARK OWNERS ASSOCIATION, a domestic corporation. ("ASSOCIATION").

(15)   ROSE ALVARADO, aka Rosa G. Alvarado and Rosa M. Alvarado, an individual

— 2 —
Complaint for Equitable Relief and Damages

1  ("ALVARADO").

2  (16)  JULIO L. GARAY, SR., also known as Julio M. Garay, an individual ("JULIO, SR.").

3  (17)  JULIO J. GARAY, JR., an individual ("GARAY, JR.").

4  (18)  AMANDA M. GARAY ("AMANDA"), an individual. And,

5  (19)  DOES 1 through 80, and 82 through 90, Inclusive ("DOES").

6  And pleads against them as follows:

7  1. PLAINTIFF provides the following table of contents for the aid of Court and counsel:

INTRODUCTION ................................................................4
JURISDICTION AND VENUE ...........................................4
CLAIMS FILING ..............................................................5
STANDING.......................................................................6
SUBSTITUTION.............. **Error! Bookmark not defined.**
PARTIES ..........................................................................7
AGENCY.........................................................................11
DEFINITIONS ...............................................................11
DAMAGES......................................................................12
FACTS
  A.  Defendants' Relationship to Calley and the Minors ..14
  B.  Calley's Relationship to Julio, Sr. ..............................22
  C.  Incident.......................................................................23
  D.  Sequestration and Denial of Medical Care.................32
  E.  Fraudulent Conveyance...............................................35
CAUSES OF ACTION
  I.   CONSTITUTIONAL VIOLATIONS
    1. Due Process (Fourteenth Amendment)...............38
    2. Due Process (Art 1, Sec. 7)................................40
    3. Failure to Sup. & Train (§ 1983) ......................41
    4. Custom, Policy & Practice (§ 1983) ..................43
    5. Sequestration & Denial of Med. Care (§ 1983)..44
  II.  NEGLIGENCE AND GROSS NEGLIGENCE
    1. Negligence ........................................................45
    2. Negligent Inflc. of Emotional Distress ..............46
    3. Premises Liability at Shelter..............................47
    4. Premises Liability at Clinic ...............................48
    5. Motor Vehicle Liability .....................................48
    6. Denial of Medical Care......................................49
    7. Gross Negligence with Delib. Indifference. .......50
  III. WRONGFUL DEATH.........................................51
  IV. PRIVACY VIOLATION ......................................52
  V.  SURVIVORSHIP.................................................52
  VI. FRAUDULENT CONVEYANCE.........................54
    1. CVTA ...............................................................54
    2. Common law......................................................55
    3. Constructive Trust .............................................55
    4. Fraud and conspiracy .........................................56
PRAYER FOR RELIEF ..................................................56

Complaint for Equitable Relief and Damages

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

2. Four young children seek justice for the loss of their mother, Calley Jean Garay, whom defendants let die with complete indifference to their job of protecting her.

3. While she was in their protective custody, they not only failed to protect her from estranged husband JULIO, SR., but they also tipped him off on how and where to find her.

4. Equally indifferent, they placed her three sons at the scene where their tender eyes were forced to watch the horror of her suffering and death.

5. This crime was so incredibly horrifying and vicious and unnecessary and heartbreaking that it caused our legislature to pass recent legislation known as Calley's Law, Senate Bill 24.

6. The efforts that defendants should have taken to protect Calley were very simple and basic. To share information, to communicate, to protect her privacy, and to protect her movements. The Defendants knew all these things, but chose not to do them, and now actually deny they had this job.

7. Calley's children seek to hold them responsible through causes of action for, inter alia, wrongful death, negligence, negligence per se, breach of the right to privacy, violation of California's medical privacy act, and premises liability. They seek injunctive and declaratory relief, compensatory and exemplary damages, and reasonable statutory attorney's fees, litigation expenses and costs.

## JURISDICTION AND VENUE

8.    This Court has original jurisdiction under the Fourteenth Amendment of the U.S. Constitution as well as 42 USC 1983.

9. Under 28 USC 1391(b)(1) and Civil Local Rule 120(b), venue and intra-district venue is appropriate in this Court because multiple defendants reside here.

10.    This Court has personal jurisdiction over the litigants:

    a.   TROUT is a citizen of North Dakota.

— 4 —
Complaint for Equitable Relief and Damages

b.   DA is a citizen of Tennessee.

c.   JG1; JG2; and JG3, who are hereafter referred to collectively as THREE SONS, are citizens of California.

d.   The following individuals are citizens and residents of California: ELENEZ; MARTINEZ; BAAS; JOHNSON; MORRIS; BOSSE; MENDEZ; SECRETARY; JULIO, SR.; GARAY, JR.; AMANDA; AND ALVARADO.

e.   Defendants BRONCO; ASSOCIATION; CAPMC; CAMARENA; and FOUNDATION; are each domestic entities, and SHELTER is a business organization, form unknown, also doing business within this state.

f.   The SUBJECT INCIDENT and all of the relevant wrongful actions and omissions occurred within this state.

g.   The causes of action asserted against the state officials are limited to those permissible by the Eleventh Amendment or by the qualifying conduct of its agents.

## CLAIMS FILING

11.   Prior to filing this action, Plaintiff, on behalf of the minors, satisfied the pre-suit claims filing requirements of the California Tort Claims Act as to all GOVERNMENT DEFENDANTS, and in particular by the timely filing and service of complete claims against them. This includes as against their named subcontractor defendants.

12.   The relevant GOVERNMENT DEFENDANTS and their subcontractors have either formally denied such claims or have done so by operation of law.

13.   Also prior to filing this action, Plaintiff, on behalf of the minors, satisfied the prefiling requirements of the Federal Tort Claims Act as against the U.S. officials named herein by filing and serving timely and complete claims, which were formally denied.

14.   In satisfaction of both Claim Acts, this Complaint is being filed within six months of the denials.

## STANDING

15.   The late Calley Jean Garay ("Calley") bore four natural children.

16.   Her daughter, minor DA, ███████, was conceived by a prior relationship with Fernando Alvarado.[1]

17.   Calley's three sons were conceived with JULIO GARAY, SR. ("JULIO") and are minor JG1, ███████; JG2, ███████; and JG3, ███████. (Hereafter, "THREE SONS.")

18.   Collectively, DA and THREE SONS shall be referred to as MINORS.

19.   TROUT is the father and successor-in interest of decedent Calley, and the court-appointed guardian ad litem of the MINORS. He seeks no personal relief.

20.   MINORS appear as parties by and solely through TROUT.

21.   Calley's mother, LaDonna Jodie Williams, concurs with both this claim and its filing. She and TROUT are the maternal grandparents of MINORS.

22.   MINORS have exclusive standing to bring the instant causes of action:

    a.   Under the hierarchal considerations set forth at CCP §§ 377.30 and 377.60, they constitute Calley's sole survivors as well as her sole heirs at law, and the statute provides no other persons standing to bring these claims.

    b.   They are also the successors in interest to her rights and claims.

    c.   THREE SONS are eligible, and continue to receive, medical benefits from the state and are being denied certain medical care as set forth herein.

23.   Calley's negligent killer, JULIO, SR., who was her estranged husband, does not qualify as either her heir or her successor in interest because he will be shown to have been a cause of, and have liability for, her wrongful death. See Probate Code § 259.

24.   In a similar manner, others related to JULIO lack statutory standing, including, but not limited to, JULIO, SR'S several adult children by a prior marriage: JULIO GARAY, JR.; AMANDA M. GARAY; Jay Garay; Rickey Garay; and Brandon Garay.

---

[1] Within the ECF-filed version of this document, MINORS have redacted the content shown in paragraphs 17 and 18 to shield personal identifying information, which is already within each defendants' possession.

Complaint for Equitable Relief and Damages

**PARTIES**

25.    Because of rules applicable to the minors lacking individual capacity to sue, perhaps the only true plaintiff in this action is their guardian, KEITH TROUT, suing on their behalf. However, to help differentiate their various claims, they shall be referred to herein collectively as MINORS, or THREE SONS.

26.    The following individuals are sued in both their official and individual capacities:

    a.    DEBORAH MARTINEZ, as an individual and as director of the County of Madera Department of Social Services ("MARTINEZ"). MARTINEZ held this position at all times relevant, including at the time of the subject incident through the present.

    b.    DANNY MORRIS, as an individual and as deputy director of the County of Madera Department of Social Services ("MORRIS"). MORRIS held this position at all times relevant, including at the time of the subject incident through the present.

    c.    MATTIE MENDEZ, as an individual and as a COUNTY employee acting as the executive director of CAPMC ("MENDEZ"). MENDEZ held this position at all times relevant, including at the time of the subject incident through the present.

    d.    SARA BOSSE, as an individual and as the public health director of the County of Madera Department of Public Health ("BOSSE"). On information and belief, BOSSE held this position at all times relevant, including at the time of the subject incident through the present.

    e.    DOES 1 through 10, and 21 through 30, Inclusive.

27.    The following individuals are joined in strictly their official capacities and strictly for purposes of plaintiff's claims for injunctive relief:

    a.    MICHELLE BAAS, in the capacity of Director of the Department of Health Care Services ("DHCS") ("DIRECTOR").

    b.    KIM JOHNSON ("JOHNSON"), as the Director of the California Department of Social Services.

    c.    DOES 21 through 30, Inclusive.

28.    The following defendants are also sued as individuals:

— 7 —

Complaint for Equitable Relief and Damages

a.   LORENA BLANCO ELENEZ ("ELENEZ").

b.   JULIO L. GARAY, SR. ("JULIO, SR.").

c.   JULIO J. GARAY, JR. ("GARAY, JR.").

d.   AMANDA M. GARAY ("AMANDA"). And,

e.   DOES 31 through 50, Inclusive.

29.   In the paragraphs of this section that follow, the MINORS define related groups of defendants and to clarify their respective spheres of responsibility.

30.   **DEFENDANTS**, when in capitals and standing by itself, shall refer to all named defendants.

31.   **RELATED DOES** shall mean the DOES that are related to their respective grouped of defendants, as alleged infra in paragraphs 36 through 53.

32.   **STATE GOVERNMENT DEFENDANTS** shall mean to include the state government-based defendants and their employees, agents, including, but not limited to, DIRECTOR; and DOES 31 through 40, Inclusive. Despite any allegations herein pled that are potentially to the contrary, these defendants are sued _only_ for injunctive and declaratory relief. All other claims against these officials are hereby withdrawn but without prejudice to later amendment. Also, and despite any statements herein potentially to the contrary, they are sued _only_ under the claims relative to the Fourteenth Amendment, the State Constitution (which overlap the Fourteenth Amendment Claims), and § 1983. Any claims against them that are impermissible under the 11th amendment are not intended.

33.   **COUNTY GOVERNMENT DEFENDANTS** shall mean to include the county GOVERNMENT based defendants and their employees, agents, including, but not limited to, COUNTY; MARTINEZ; MENDEZ; MORRIS; BOSSE; and DOES 1 THROUGH 10; and 21 through 30, Inclusive.

34.   **GOVERNMENT DEFENDANTS** shall include all government-based defendants, including, COUNTY GOVERNMENT DEFENDANTS; and STATE GOVERNMENT DEFENDANTS.

35.   **SHELTER SUBCONTRACTOR DEFENDANTS** shall mean CAPMC; SHELTER;

1    and DOES 21 through 30.

2    36.    **PRIVATE SUBCONTRACTOR DEFENDANTS** shall mean the closely-related

3    and/or  controlled-controlled subcontractors, employees, and agents of the county and state

4    governments, i.e., who were charged with protecting this family and their privacy but failed these

5    duties with either negligence and/or with a gross negligence that was deliberately indifferent to

6    the foreseeable result, i.e., CAPMC; SHELTER; SHELTER SUBCONTRACTOR

7    DEFENDANTS; CAMARENA HEALTH; FOUNDATION; ELENEZ; and their RELATED

8    DOES above-listed for the county and state defendants.

9    37.    Within causes of action, **INCLUDED DEFENDANTS** shall refer to the defendants

10    against whom the cause of action is directed.

11    38.    **GOVERNMENT ACTOR** shall include GOVERNMENT DEFENDANTS.

12    39.    **AIDING AND ABETTING DEFENDANTS** shall include DOES 61 through 70,

13    inclusive, who are individuals that, on information and belief, aided and abetting JULIO in

14    locating Calley and her THREE SONS, drove JULIO, SR. to the scene, and/or took other acts

15    that aided and abetted the negligent shooting in some other manner.

16    40.    **MOTOR VEHICLE DEFENDANTS** shall mean COUNTY; PARTNERSHIP;

17    SHELTER and their RELATED DOES.

18    41.    **CONSPIRING DEFENDANTS** shall mean JULIO, SR.; ALVARADO; AMANDA and

19    DOES 71 through 75, and in connection with the MINORS' claims that they attempted a

20    fraudulent or sham transfer of the SUBJECT RESIDENCE (defined herein at paragraph 63) in

21    effort to hinder, defraud or delay, inter alia, the known creditor claims of the MINORS and/or to

22    defraud and deceive them**.**

23    42.    **ABUSING DEFENDANTS** shall mean GARAY, JR.; and DOES 76 through 80,

24    Inclusive.

25    43.    **REAL PROPERTY OWNER DEFENDANTS** shall refer to BRONCO;

26    ASSOCIATION; CAMARENA HEALTH; FOUNDATION; and DOES 81 through 85,

27    Inclusive; and as the owners, operators, lessors, lessees, and persons in control of the SUBJECT

28    PROPERTY.

44.   Both CAMARENA HEALTH and FOUNDATION are organized as nonprofit public benefit corporations.

45.   On information and belief, CAMARENA HEALTH FOUNDATION was formed as an alter ego of CAMARENA HEALTH, sharing the same officers, directors, attorneys, and headquarters, and providing the same medical services as CAMARENA HEALTH.

46.   FOUNDATION was formed after the date of the subject incident for at least the partial purpose of attempting to fraudulently transfer and/or fraudulent shield the assets of CAMARENA HEALTH from the claims of its creditors and its potential judgment creditors, the latter of which include the instant and expected claims of the minors.

47.   **SHELTER OWNING DEFENDANTS** shall refer to COUNTY; and DOES 86 through 90, Inclusive; and as the owners, operators, lessors, lessees, and persons in control of the SHELTER LOCATION defined at paragraph 64, who are responsible for the liabilities arising out of this ownership, and based upon the following:

   a.   On information and belief, **SHELTER**, which is also known as Martha Diaz Battered Women's Shelter, is either a subsidiary of PARTNERSHIP, or it constitutes its own partnership, or it is an unincorporated association whose precise form is presently unknown, and it is thus subject to suit under Code of Civ. Proc. § 369.5.

   b.   On information and belief, this building is owned, operated, controlled, and leased (to and from) by COUNTY; PARTNERSHIP; SHELTER; and DOES and in order to provide shelter services to battered women.

48.   **DOES** shall refer to DOES 1 through 85, Inclusive, whose true names and capacities are unknown to Plaintiff. On information and belief, said DOES are masters, servants, agents, employees of the other named defendants, or have some other association or agency to them, and acted within the scope of those capacities and with the consent and permission of each of the remaining defendants, and as further alleged, infra, at paragraphs 56 through 60. Because the necessary information establishing their true names and capacities is presently unavailable to Plaintiff through public records, it will require discovery. Plaintiff will seek leave to amend to

— 10 —

Complaint for Equitable Relief and Damages

1     join DOES when this information comes to light.

2     49.    Herein, any reference to a specific date or time is for general purposes only. The event

3     described is pled to have occurred "on or about" the date or time stated.

4

5     **AGENCY**

6     50.    At all relevant times, the COUNTY is and was a duly organized public entity, form

7     presently unknown, existing under the laws of the State of California. At all relevant times, the

8     COUNTY was responsible for the actions and inactions of the persons and entities who caused

9     the damages complained of herein. Such persons and entities include subcontractors, supervisors,

10     policymakers, managers, agents, and employees of the COUNTY.

11     51.    At all relevant times, the COUNTY'S supervisors were duly authorized employees and

12     agents of COUNTY. They were acting under color of law within the course and scope of their

13     respective duties within the Departments of Social Services and Public Health of the County of

14     Madera and with the complete authority and ratification of their principal, the COUNTY.

15     52.    At all times relevant, MARTINEZ; BOSSE, MENDEZ, and MORRIS, were duly

16     appointed officers and/or employees or agents of the COUNTY, subject to oversight and

17     supervision by the COUNTY DEFENDANT'S elected and non-elected officials.

18     53.    At all times relevant, each and every responsible party was the agent of each and every

19     other such party and had the legal duty to oversee and supervise the hiring, conduct and

20     employment of each and every such party herein.

21     54.    In doing the acts, failing to act, and omitting to act as hereinafter described, the individual

22     and corporate responsible parties were acting on the implied and actual permission and consent

23     of the COUNTY.

24

25     **DEFINITIONS**

26     55.    Hereafter, **THE SUBJECT INCIDENT** as well as the **DATE OF THE SUBJECT**

27     **INCIDENT** shall refer to the events immediately leading toward Calley's death on or about July

28     14, 2020.

Complaint for Equitable Relief and Damages

56.    Hereafter, **SUBJECT PROPERTY** shall mean the building, premises, parking, and site of Camarena Health at 505 Almond Street, Madera, California.

57.    Hereafter, **SUBJECT RESIDENCE** shall mean the residential real property formerly occupied by the family of JULIO, Calley and THREE SONS, which is situated in Madera County, known as 1101 Sonoma Avenue, Chowchilla, California, at Assessor's Parcel Number 001-018-005-000, and more particularly described as:

> Lot 1 in Block 152 of the City of Chowchilla, according to the map entitled,
> "Subdivision of Blocks 152, 153, 154, 155 City of Chowchilla," filed and
> recorded in this office of the County Recorder of the County of Madera, State of
> Calif70ornia, July 3, 1923, in Vol. 4 of maps, at page 125.

58.    Hereafter, **SHELTER LOCATION** shall mean the buildings known as the Martha Diaz Shelter where Calley and her THREE SONS were housed and transported from on the DATE OF THE SUBJECT INCIDENT to reach the SUBJECT PROPERTY.[2]

59.    Hereafter, **WRONGFUL ACTS** shall include not only affirmative conduct but also failures to act.

## DAMAGES

60.    As a direct and proximate result of the WRONGFUL ACTS of the DEFENDANTS that are alleged herein, infra, THREE SONS suffered personal and bodily injury during the subject incident. Hereafter, these damages shall be referred to as PERSONAL INJURY DAMAGES.

61.    As a further direct and proximate result, THREE SONS were each forced to witness the bloody, brutal, and violent death of their mother as described, thereby causing, and continuing to cause them, general damages, serious emotional distress, mental damages, great physical and mental pain, and suffering that amounts to a shock to the system, as well as special damages according to proof. Hereafter, this species of THREE SON'S physical and emotional injuries shall be referred to as SERIOUS EMOTIONAL DISTRESS DAMAGES.

62.    As a further direct and proximate result, THREE SONS have each suffered the following

---

[2] Both CAP and government authorities keep the Shelter's Location undisclosed.

Complaint for Equitable Relief and Damages

recoverable special damages, including, but not limited to:

a. Future loss of wages and benefits, as well as injury to and an impairment of present and future earning capacity and the ability to engage in gainful occupation and have thereby suffered damages.

b. Other special damages, including, but not to, medical and incidental expenses for the examination, treatment, and care of these injuries, according to proof.

c. On information and belief, THREE SONS will incur future medical and incidental expenses for the examination, treatment, and care of these injuries, according to proof.

Hereafter, the combination of damages listed within this paragraph shall be referred to as SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES

63. As a further direct and proximate result of the WRONGFUL ACTS of the DEFENDANTS leading directly and proximately to the MINOR'S loss of their mother, MINORS have each suffered additional economic and noneconomic damages, including, but not limited to:

a. The loss of Calley's love, companionship, comfort, care, assistance, protection, affection, society, moral support.

b. The loss of her training and guidance.

c. The loss of her financial support.

d. The loss of gifts or benefits that they would have expected to receive from her.

e. The loss of the reasonable value of the household services.

f. Their own out-of-pocket loss for her funeral and burial expenses.

Hereafter, the combination of damages listed in this paragraph shall be referred to as WRONGFUL DEATH DAMAGES.

64. As a further direct and proximate result of the WRONGFUL ACTS of the DEFENDANTS, Calley suffered pain, injury, and humiliation from gunshot wounds prior to her death, and this caused her estate to incur medical care, final expenses, and funeral expenses, as well as special damages, including, but not limited to, medical and related expenses, loss of earnings, and damage to personal property, entitling the MINORS, who are Calley's heirs under

1    Code of Civil Procedure Section 377.32, to recover these damages. Hereafter, this combination

2    of damages shall be referred to as SURVIVORSHIP DAMAGES.

3    65.   The conduct of the JULIO, SR.; AIDING AND ABETTING DEFENDANTS; and

4    PRIVATE SUBCONTRACTOR DEFENDANTS, including that of their employees and agents,

5    was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights

6    of Calley Garay, her heirs, her estate, and the MINORS, entitling them to an award of exemplary

7    and punitive damages under Code of Civ. Prox. § 3294. Hereafter, these damages shall be

8    referred to as EXEMPLARY DAMAGES.

9    66.   In pursuit of the claims herein, MINORS have incurred reasonable attorney's fees,

10   litigation expenses and costs, and pursue the recovery of same where authorized by statute,

11   including, but not limited to, 42 U.S.C. § 1988, or as a special item of damages. Hereafter, all

12   three components of this claim and the right to recover them shall be referred to collectively as

13   the CLAIM FOR FEES & COSTS.

14

15                                    **FACTS**

16   **A.  Defendants' Relationship to Calley and the Minors.**

17   67.   The allegations made within this section are based upon reliable information and belief

18   and without the benefit of a full investigation or having access to the formal mechanisms of

19   discovery. For example, the MINORS presently have no access to the various criminal

20   investigative materials that the governmental authorities have placed under seal, and which,

21   therefore, are presently within the exclusive possession of GOVERNMENT DEFENDANTS.

22   Therefore, the below factual allegations, both the general and the specific, are made with the

23   express reservation that they are subject to change as more facts come to light.

24   68.   For example, STATE GOVERNMENT DEFENDANTS (i.e., the STATE OF

25   CALIFORNIA ("STATE"), acting through its current Director of the Department of Health Care

26   Services, MICHELLE BAAS, and through its current Director of the Department of Social

27   Services, KIM JOHNSON), also provide a substantial direct funding and oversight role in the

28   relevant state and federal health services and domestic violence programs.

69.    The COUNTY GOVERNMENTAL DEFENDANTS (i.e., which include county GOVERNMENT based defendants plus their employees, agents, and subcontractors, including, but not limited to, COUNTY; MARTINEZ; MENDEZ; MORRIS; BOSSE; and DOES 1 THROUGH 10; and 21 through 30, Inclusive) also provide a direct role in funding and oversight of the relevant health care services and domestic violence programs.

70.    The County's Department of Social Services, its Department of Public Health, and the PRIVATE SUBCONTRACTOR DEFENDANTS are the recipients of the aforementioned funding and oversight of the State, County and Federal governments.

71.    CAMARENA HEALTH ("CAMARENA") and CAMARENA HEALTH FOUNDATION ("FOUNDATION"), and relevant DOES, which collectively or individually qualify as a "Federally Qualified Health Center," have a family practice that provides health care services to the County's underserved, including women's health and pediatric care. Hereafter, these two entities shall be referred to as "CAMARENA FQHC."

72.    COMMUNITY ACTION PARTNERSHIP OF MADERA COUNTY, INC. ("CAPMC") and relevant DOES, which collectively or individually qualify as a "Community Action Agencies" (CAA), is a 501(c)(3) organization formed in Madera County to carry out the "Community Action Program" (CAP), which was founded by the 1964 Economic Opportunity Act (EOA) to fight poverty by empowering the poor as part of the "War on Poverty." According to CAPMC's own website, it is a multi-million-dollar corporation.

73.    Herein, CAMARENA; FOUNDATION; CAPMC, SHELTER SUBCONTRACTOR DEFENDANTS; agents such as ELENEZ; and DOES 1 through 10, and 31 through 40, Inclusive, shall be referred to as PRIVATE SUBCONTRACTOR DEFENDANTS.

74.    CAPMC was created in 1965 by the County of Madera Board of Supervisors to administer programs authorized by the federal government under the Equal Opportunity Act of 1964.

75.    Through this and other funding and oversight, CAPMC delivers a variety of services to citizens of the COUNTY, including those suffering from domestic violence.

76.    The relevant services include:

    a.    Planning and assisting for a safe exit from relationships.

Complaint for Equitable Relief and Damages

b.   Applying for restraining orders.

c.   Transportation to and from Court.

d.   Transportation to obtain necessities and essential services.

e.   Supplying resources.

f.   Reference to counseling, and also including the victim's children.

g.   Provision of safe housing.

77.   The state and county's act of providing the foregoing health care services and domestic violence programs through PRIVATE SUBCONTRACTOR DEFENDANTS constitutes a delegation of those services that are traditionally provided by the government and pursuant to their constitutional and statutory obligations, including, but not limited to, the following reservations and mandates:

a. Governments at the state, county and local level are beneficiaries of numerous statutes enacted by Congress to provide medical services to those who cannot afford it, including, but not limited to, Medicare, Medicaid, and the Children's Health Insurance Program. These acts establish and define specific statutory rights of individuals to receive health care services from the government.

b. The 10th Amendment's reservation of all police power to the states imposes upon them the obligation to protect the public health, safety, and morals.

c. In California, the state delegates its obligation to the counties and municipalities through various provisions of the statutory code. See, for example, Government Code §§ 26600-26616, directing the obligations of the county sheriffs.

d. Cities and counties must also enforce within their limits their own local ordinances governing police, sanitary and other matters. Cal. Const., art. XI, § 7.

e. Chief among the obligations of the police power is protecting against crime, i.e., including present crime and that are readily foreseeable, and particularly by specific actors against specific potential victims and witnesses.

f. In the latter situation, the local governments have traditionally delivered enhanced security and stand-by protection to victims and witnesses who are the foreseeable objects of

— 16 —

Complaint for Equitable Relief and Damages

crime, and often as a part of other government-related services, such as provision of:

    i.   Food.

    ii.   Shelter.

    iii.   Medical.

    iv.   Counseling.

    v.   Transportation. And,

    vi.   Protection.

78.    To fulfill these obligations as to victims of and witnesses to domestic violence, CAPMC and RELEVANT DOES own and operate the subject Martha Diaz Shelter for Battered Women, and hire other SHELTER SUBCONTRACTOR DEFENDANTS (i.e., which includes SHELTER; and DOES 21 through 30).

79.    The combination of services delivered by the SHELTER CONTRACTOR DEFENDANTS and the necessary restrictions these services imposed upon the movement of protected occupants constituted a form of protective custody.

80.    Operators of such shelters and clinics must observe a tight system of requirements.

81.    For example, operators are restricted in providing such services by:

    a.   Industry standards.

    b.   Federal guidelines.

    c.   California's guidelines.

    d.   County guidelines.

    e.   Funding restrictions.

    f.   Contractual obligations. And,

    g.   Internal policies and procedures.

82.    Among the restrictions at the shelter constituting protective custody were locked entrances, locked gates, a system of checkout, and limitations on contact with persons outside the shelter. On information and belief, occupants who entered the shelter sign a contract to observe these restrictions. Those who breach them are subject to forfeiting protection and custody.

Complaint for Equitable Relief and Damages

83.   The County Board of Supervisors has substantial control over the CAPMC, utilizing its power under the Green and Quie Amendments of the EOA to control the board membership of CAPMC and also its ability to control the implementation of priorities behind CAPMC's funded policies, practices, procedures.

84.   The Supervisors have installed the director of the County's Department of Social Services, MARTINEZ, who, on information and belief, substantially controls CAPMC's funding, and therefore substantially controls adoption and implementation of CAPMC's policies, practices, and procedures.

85.   At the time of the SUBJECT INCIDENT described herein, the Department of Social Services was in a funding and implementation crises, leading to major backlogs in the investigation of domestic violence claims, as reported in the various investigative articles that have already been disclosed to the Defendants.

86.   On further information and belief, this crisis led to the County failing to fund and implement various security and privacy policies that would have protected Calley and her THREE SONS from the subject harm. For example:

  a.   Proper security for the family during transportation, drop off and pick up.

  b.   Distribution of information about the subject threat to all relevant parties for purposes of implementing proper security and privacy.

  c.   Childcare to keep children from the scene.

87.   At all times relevant, COUNTY DEFENDANTS, acting through its Department of Social Services, retained, employed, or contracted with the CAMARENA FQHC to provide medical services and treatment for the County's underserved, which included Calley and her THREE SONS. On information and belief, the contract was pursuant to the County's published model contract, which included the duty of FQHCs to protect the private information of these patients.

88.   Pursuant to the foregoing contract concerning Calley and THREE SONS, CAMARENA FQHC provided them therapy and treatment through the time of Calley's death.

89.   In June of 2020, SHELTER CONTRACTOR DEFENDANTS, as an agent of COUNTY GOVERNMENTAL DEFENDANTS, undertook the duty to provide services to Calley and

Complaint for Equitable Relief and Damages

1   MINORS, who checked in as protected occupants, and remained so at all times relevant to this

2   complaint.

3   90.   STATE, COUNTY and PRIVATE SUBCONTRACTOR DEFENDANTS were aware of

4   the high risk to victims of domestic violence and the necessity of modifying and managing its

5   medical records systems to protect confidential information from disclosure to abusers.

6   91.   For example, in a letter dated Dec. 23, 2008 (08-59), Vivian Auble, the Chief Medi-Cal

7   Eligibility Division of the Department of Health and Human Services Agency of the State of

8   California, wrote to all county welfare directors, administrative officers, Medi-Cal program

9   specialists/liaisons, health executives, and mental health directors. Her purpose was to "*clarify*"

10  then existing procedures for removing certain information from the Medi-Cal Eligibility Data

11  System (MEDS) for children and adults who have left their homes because of domestic violence.

12  She began by providing a description of the problem:

13      Both adults and children can be victims of domestic violence and abuse. <u>When

14      the decision is made by the abused adult or child to leave the home, they need

15      protection from the abuser who often is enraged and attempting to find the abused

16      individuals</u>. It is critical that the abuser be prevented from obtaining the new

17      address of the victims in order to ensure their safety. (Emphasis added.)

18  She then directed the letter's recipients to remove certain information from the MEDS system to

19  protect against abusers learning the victim's whereabouts. Her letter provided an email and

20  telephone procedure for the recipients to request that removal occur "*within 24 hours*" and for

21  their follow-up in case removal has not been confirmed within this time period.

22  92.   On information and belief, STATE, COUNTY and PRIVATE SUBCONTRACTOR

23  DEFENDANTS were deliberately indifferent in their systemic failure to take these and similar

24  measures within their shared computer systems (which is configured to share and auto-populate

25  this confidential information) to protect against abusers learning the victim's whereabouts, and

26  that in the instance of Calley and her children, this indifference and failure lead to JULIO

27  GARAY, SR. learning their whereabouts and directly causing their injuries.

28  93.   During treatment and the protective custody of Calley and her children by COUNTY

1    DEFENDANTS and their PRIVATE SUBCONTRACTORS, Calley was interviewed repeatedly.

2    These interviews were reduced to transcripts and shared between agencies. Within these

3    interviews, she warned COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR

4    DEFENDANTS, of her risk of danger, and in particular about the proclivities of JULIO, SR., his

5    history of violence and retaliation whenever she left and reported him, and how, whether they

6    kept him inside or outside of incarceration, either he or his agents would foreseeably employ the

7    necessary means to find them and cause serious harm.

8        94.   During the course of these warnings, Calley affirmatively prohibited all COUNTY

9    DEFENDANTS from disclosing her private information and whereabouts to not only JULIO,

10   SR. but all his relatives and friends, and asked them to appropriately mark their files.

11       95.   Despite these warnings and prohibitions, COUNTY DEFENDANTS and their

12   SUBCONTRACTOR DEFENDANTS were both deliberately indifferent toward taking them

13   seriously and taking the necessary steps to provide this privacy and protection. Their follow up

14   was negligible to non-existent.

15       96.   COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS

16   were also deliberately indifferent in both falsely advising Calley they would follow her directives

17   and take necessary steps to provide privacy and protection, and also in failing to warn her in

18   advance that they actually would not do so, giving Calley a false sense of security and reliance.

19       97.   The indifference and inaction that occurred at lower levels of staff was because of

20   inadequate supervisions and follow-up by COUNTY DEFENDANTS and their PRIVATE

21   SUBCONTRACTOR DEFENDANTS.

22       98.   For example, as a federally qualified health center, regulations required CAMARENA

23   FQHC in cases of known domestic violation to modify the MEDS files of Calley and THREE

24   SONS to protect against wrongful disclosure of confidential medical information to the abuser

25       99.   Litigation in this matter includes the STATE DEFENDANTS failure to inspect and

26   supervise.

27       100. In this respect, THREE SONS are informed and believe that Madera County and its

28   Department of Social Services were bound by the requirements of reporting to the State of

California and to the United States information, including the information involved in this claim.

101. THREE SONS are informed and believe that the California Department of Social Services failed to provide adequate supervisory control over the actions of the Department of Social Services of Madera County (hereafter "DSS") and its agents, employees, contractors and supervisors in regard to adequate training, supervision, equipment, planning, oversight, and administration; failed to adequately investigate background, training and experience of DSS and its subcontractors, agents, employees and supervisors; failed to adequately train DSS subcontractors, agents, employees and supervisors in identifying threats of force or violence to persons in need of protection in its shelter and care; and failed to adequately train DSS and its subcontractors, agents, employees and supervisors in the provision of protection of persons in need of protection in its shelter and care who are exposed to objectively apparent danger from known individuals.

102. They are further informed and believe that at relevant times the Madera Department of Social Services received Federal, California, and Madera County funds to provide Child and Adult Protective Services to fulfill its mandate to provide shelter, medical care, comfort, and security to battered and unprotected women and children in need in Madera County including Calley and THREE SONS.

103. They are further informed and believe that Madera County and its Department of Social Services were bound by the requirements of reporting to the State of California and to the United States information, including the information stated in this claim.

104. They are informed and believe that the United States Department of Health and Human Services (herein "DHHS") failed to provide adequate supervisory control over the actions of the California Department of Social Services and the Department of Social Services of Madera County (herein "DSS") and their agents, employees, contractors and supervisors in regard to adequate training, supervision, equipment, planning, oversight, and administration; and failed to adequately investigate background, training and experience of the California DHCS and DSS and its subcontractors, agents, employees and supervisors; failed to adequately train DSS subcontractors, agents, employees and supervisors in identifying threats of force or violence to

Complaint for Equitable Relief and Damages

persons in need of protection in its shelter and care; and failed to adequately train the California Department of Social Services and DSS and its subcontractors, agents, employees and supervisors in the provision of protection of persons in need of protection in its shelter and care who are exposed to objectively apparent danger from known individuals.

105.   These failures were breaches of mandatory duties imposed by law and were and continue to be the proximate cause of injury to THREE SONS in the denial of medical care and sequestration from relatives interested in protecting their legal interests.

**B.  Calley's Relationship to Julio, Sr.**

106.   Calley married JULIO, SR. in approximately 2015.

107.   Before marriage, the couple had one child, JG1. Later, they had JG2 and JG3. This family of five lived at 1101 Sonoma Ave., in Chowchilla.

108.   Calley suffered from battered wife syndrome. Despite the abusive treatment that she and three sons suffered at the hands of JULIO, SR. over a sustained period, she found it difficult to take the kids and leave.

109.   The violence was severe. She and her three boys suffered regular beatings from his fists and blunt objects. On one occasions, he beat Calley with a metal bar. These beatings are described in graphic detail in transcripts. The police file contains photographs of the scaring and bruising that marked her thighs, hips, and torso.

110.   The cruelty extended while JULIO, SR. was at work. He would leave them locked at home, and then would call multiple times during his shift to make sure they hadn't left. If Calley failed to pick up, he would have his daughter AMANDA go to the house to find out why.

111.   Perhaps most cruelly of all, for the six plus years before the killing, JULIO, SR. prevented Calley from contacting her daughter, DA.

112.   Calley's early attempts to escape failed. For example, when she tried in 2019, AMANDA immediately tracked them down and relayed their location back to JULIO, SR., who came and got them by force and returned them home.

113.   They would pay dearly. As was JULIO, SR'S practice on these occasions, he would

1   administer beatings and whippings until he felt they had been sufficiently taught a "lesson" about
2   the folly of trying to escape.

3   114.  On about May 15, 2020, Calley had reason to try again. Earlier that morning while
4   JULIO, SR. was preparing to leave for work he promised that upon his return he would "*put her*
5   *into the morgue*" simply because she had forgotten to pack his lunch with potato chips.

6   115.  Calley was so terrified by his threat that she immediately sought the help of her first
7   cousin, Sarah Rodriguez, who lived in the vicinity. Rodriguez, in turn, sought the help of her
8   mother, Terry Bassett, and the two rented a car and retrieved Calley and the children before
9   JULIO, SR. could return home. They took them to the Chowchilla Police Department for
10   protection. (Hereafter, this date shall also be referred to as the DATE OF PERMANENT
11   SEPARATION.)

12   116.  After an interview, the police transferred them to the Madera Department of Social
13   Services Adult Protection for care and protection.

14   117.  The Police arrested JULIO, SR., charging him with criminal spousal and child abuse.

15   118.  They also obtained approval from a judge of the local superior court to issue an
16   emergency protective order prohibiting JULIO, SR. from contacting or approaching Calley and
17   the children.

18   119.  Among the provisions in this protective order, one prohibited him from having a gun, and
19   another prohibited him from taking "*any action, <u>directly or through others</u>, to obtain the*
20   *addresses or locations*" of the protected persons. (Protective Order at paras. 3(d) and (e),
21   emphasis added.) On information and belief, all Defendants were or should have been aware of
22   the protective order and its provisions.

23   120.  At the time of his release and through the date of Calley's killing, JULIO remained subject
24   to the protective order.

25

26   **C.  Incident.**

27   121.  On information and belief, Social Services initially placed Calley and her boys within a
28   Fresno hotel. Later, they transferred them to the SHELTER, where they arrived on or about June

1    5, 2020, and remained through the date of the SUBJECT INCIDENT.

2    122. On or about July 13, 2020, while the criminal investigation was pending, AMANDA

3    assisted in having JULIO, SR. released from jail.

4    123. In or about early July 2020, LORENA BLANCO ELENEZ and/or PRIVATE

5    SUBCONTRACTOR DEFENDANTS contacted JULIO, SR'S residence and told him or

6    AIDING AND ABETTING DEFENDANTS about Calley's appointment, providing the time and

7    place of the appointment set for July 14, 2020, at CAMARENA FQHC, located at 505 Almond

8    Street, in Madera. By law and regulation, ELENEZ and the DOES were not authorized to disclose

9    this information to the person(s) that were not authorized to receive it.

10    124. After the call, ELENEZ, or PRIVATE SUBCONTRACTOR DEFENDANTS or others

11    warned supervisors that the private information appointment had been wrongfully disclosed.

12    Despite this knowledge, the supervisors failed to advise Calley, to reschedule the appointment,

13    or to take other security measures, but were deliberately indifferent to the substantial and likely

14    risk of harm that they had created. They entirely failed to appreciate the situation and act.

15    125. In fact, in the case of not protecting Calley's private information, the failure to act was a

16    result of an adopted informal policy or course of conduct by both COUNTY DEFENDANTS and

17    their PRIVATE SUBCONTRACTOR DEFENDANTS holding that they had no duty to act, but

18    instead "had to" disclose private information of domestic violence victims to other family

19    members when requested. As a result, this led to a further policy of disclosing private information

20    to family members even when they had not requested it, such as in the case of the FQHC calling

21    a household to warn of a forthcoming medical appointment.

22    126. At the time of the disclosure listed in paragraph 135, Calley had already informed

23    LORENA BLANCO ELENEZ and/or PRIVATE SUBCONTRACTOR DEFENDANTS of the

24    violent and retaliatory history of JULIO, SR., and the particular risk he thereby posed, that he

25    was under a restraining order from communicating with her and THREE SONS, and that they

26    had no authority to disclose private medical information to him.

27    127. Because of this lack of authority or other good cause, said defendants violated Civil Code

28    Section 56.10.

Complaint for Equitable Relief and Damages

128.  At the time of the disclosure listed in paragraph 135,  the subject health care provider was not required to disclose this information, as it was not necessary to secure consent for provision of medical care nor payment for such services. In fact, they understood this directive, were negligent and grossly indifferent as alleged herein, and have wantonly invented a story after the fact the disclosure was made purposefully as required by law.

129.  Similarly, and in the case of not taking necessary steps to protect Calley and THREE SONS from harm through adequate security, as further alleged hereinbelow, COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS believed that this was not their responsibility toward their protectees.

130.  In both cases, these informal policies and courses of conduct became the customs, the standard operating procedures, and the widespread and well-settled practices of COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS.

131.  Through these informal policies and courses of conduct of COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS, a long and undisclosed history developed of wrongfully failing to provide adequate protection and privacy for protectees, and despite the known and acute risks generally, and the particularized known risks in the case of specific protectees, such as Calley and THREE SONS.

132.  The situation of Calley and THREE SONS and the dangers the likes of JULIO, SR. presented to this type of protectee, were of a common type in the case of the security and medical services that COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS regularly provided to other domestic violence victims.

133.  The policy making officials of COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS knew that their employees and agents would confront this particular situation. This came from their experience in sheltering and providing medical care to domestic violence victims at risk of harm from their separated spouses/fathers, and from knowledge gained by state directives about handing MEDS files, and from knowledge from workshops and other inter-governmental conventions and workshops. From this body of knowledge, the administrators and policy makers of both COUNTY DEFENDANTS and their

Complaint for Equitable Relief and Damages

PRIVATE SUBCONTRACTOR DEFENDANTS knew their lower-level staff would confront the precise situation presented by the protectees such as Calley and THREE SONS, and as threatened by violent and resourceful spouses the likes of JULIO, SR., and that steps were necessary to provide such persons with adequate privacy and protection.

134. Despite this knowledge and experience, the administrators and policy-makers of the COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS failed to implement adequate training of lower-level staff to both provide them with authority, and to give them direction, to carry out the necessary steps to provide Calley and THREE SONS with privacy and security to protect against known risks and particularized danger presented by JULIO, SR., as was their duty. Over time, the non-observance of the necessary steps became widespread, permanent, and well-settled and morphed into a common understanding about how to react and be indifferent to similar situations.

135. The decision of levels of management and policy makers of the COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS to affirmatively act in this manner was deliberately indifferent to the known risks of harm and/or death to those they are protecting. In the case of Calley and THREE SONS, these decisions lead to lower-level staff both failing to take action to provide security and privacy despite the known and particularized risks presented by JULIO, SR., but also failing to advise Calley that they would not be taking such actions and giving her a false sense of security that they would.

136. These failures to act and supervise have caused COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS to develop a reputation for lax security, making their protectees an easy target, such as was experienced by Calley and her THREE SONS. As a consequence, these failures to acts have and will frequently and foreseeably lead to resulting harm from violence and deprivations of constitutional right, including bodily harm and loss of life, while citizens are expecting and depending upon the protection of defendants who are amply paid by taxpayers to perform this duty.

137. These failures to act and supervise led proximately, directly, and substantially to the Calley's death and other harms as alleged herein.

138. On the DATE OF THE SUBJECT INCIDENT, agents of COUNTY DEFENDANTS; PRIVATE SUBCONTRACTOR DEFENDANTS; SHELTER DEFENDANTS; and/or MOTOR VEHICLE DEFENDANTS loaded Calley and her THREE SONS into the van at the Marth Diaz Shelter in a negligent, grossly negligent and non-secretive manner, and without the protection of a portico, courtyard, or other architectural shielding, such that JULIO, SR., or AIDING AND ABETTING DEFENDANTS, already knowing about the time and place of the medical appointment, were able to stake out this loading procedure, follow the van, or tip off JULIO, SR. by telephone, and thereby accomplish the timing of his actions leading toward Calley's death.

139. On the same date, JULIO, SR. arrived at CAMARENA FQHC and staked out the front entrance.

140. He had driven there in a white 90's chevy single cab truck that he had borrowed from a friend.

141. On information and belief, the friend loaning the vehicle and the other AIDING AND ABETTING DEFENDANTS (i.e., DOES 61 through 70) knew or should have known about JULIO, SR'S plan to cause Calley and THREE SONS harm that day, but nevertheless provided him with aid and assistance that contributed and led to the crime, including, but not limited to, loaning him the car, providing him with a weapon, providing him with gas or other financial assistance, and otherwise providing him assistance in reaching the scene, and planning and executing his crime.

142. That day, Calley and THREE SONS were transported to the FQHC in a white van with government plates that was operated by an employee or agent associated with SHELTER DEFENDANTS, thereby enabling JULIO, SR. to identify the van as transporting his family.

143. The van was owned, operated, controlled, and leased (from and to) COUNTY; PARTNERSHIP; SHELTER and DOES ("MOTOR VEHICLE DEFENDANTS"). On further information and belief, said defendants entrusted the operation of this van to employees or agents acting within the scope of their agency or employment in order to transport them to the appointment.

144. On information and belief, the operator was an employee of either COUNTY

1  DEFENDANTS or SHELTER DEFENDANTS or MOTOR VEHICLE DEFENDANTS.

2  145. The operator was not qualified to operate the van in a manner to provide Calley and

3  THREE SONS with security and protection, and otherwise to escort them in and out of the van

4  to and from the building, as she lacked the necessary skill, experience, and training to do these

5  functions, and otherwise lacked the means to repel an armed attack.

6  146. MOTOR VEHICLE DEFENDANTS and their agents were negligent in the loading and

7  operation of this van, and these acts and omissions were the legal (proximate) cause of Calley's

8  wrongful death, and their damages as alleged herein

9  147. COUNTY DEFENDANTS and SHELTER DEFENDANTS were grossly negligent and

10  deliberately indifferent to the risks of having THREE SONS accompany Calley to the

11  appointment, and thereby exposing them to unnecessary risk of harm. On information and belief,

12  they had failed to arrange for the care of THREE SONS during the appointment and also failed

13  to have a program in place for this, forcing Calley to take them with her.

14  148. When they arrived at CAMARENA FQHC, the operator parked an unsafe distance from

15  the entrance, and failed to take other secretive measures, such as approaching the clinic from its

16  rear exit, and thereby permitted JULIO, SR. to observe Calley's arrival.

17  149. Despite the known risks, COUNTY DEFENDANTS; PRIVATE SUBCONTRACTOR

18  DEFENDANTS; SHELTER DEFENDANTS; and/or MOTOR VEHICLE DEFENDANTS, and

19  in particular the CAMARENA FQHC, were grossly negligent and deliberately indifferent in

20  failing to utilize the security measure of having Calley arrive and depart through the rear exit.

21  150. At the time of the incident, the duty to assess risks and provide security at the SUBJECT

22  REAL PROPERTY was in a state of flux, as demonstrated by the following facts:

23  (1) The subject professional park was developed by BRONCO.

24  (2) The development has multiple parcels for each of its office buildings plus a separate

25  parcel forming the common area in and around the properties, an area that is utilized for, inter

26  alia, parking and circulation.

27  (3) On November 30, 2018, agents of BRONCO caused the filing of articles of

28  organization to form ASSOCIATION, a California nonprofit mutual benefit corporation.

— 28 —
Complaint for Equitable Relief and Damages

1    (4) BRONCO'S purpose in forming ASSOCIATION was eventually to hand off duties

2    to maintain and secure the common area.

3    (5) On or about June 27, 2019, BRONCO recorded protective covenants, conditions, and

4    restrictions (CCRs) that burden BRONCO and purchasers of condominium parcels on the

5    property with the burden of assessing and implementing the maintenance and security obligations

6    of the common area.

7    (6) The CCRs provide that until all condominium parcels are sold, BRONCO and the

8    then existing condominium owners forming the ASSOCIATION (of which BRONCO was one)

9    would jointly have the duty to maintain and secure the common area, a duty that would continue

10    until the last parcel was sold.

11    (7) Among BRONCO'S duties recognized by the CCRs was assessing and providing

12    security and protection for the common area, a duty which necessarily required interaction with

13    the various ASSOCIATION owners such as CAMARENA HEALTH and FOUNDATION, to

14    assess these operational risks.

15    (8) In relation to the last duty, BRONCO held the duty to pay the wages and related

16    payroll costs of personnel employed by BRONCO to implement these services.

17    (9) On the date of the subject incident, BRONCO still held a mutual obligation with

18    ASSOCIATION for maintenance and security because BRONCO was still the owner of at least

19    one of the parcels.

20    (10)    CAMARENA HEALTH and FOUNDATION had institutional knowledge of the

21    necessity to protect the movements of domestic violence patients.

22    (11)    On information and belief, prior to the subject incident, REAL PROPERTY

23    OWNER DEFENDANTS (i.e., BRONCO; ASSOCIATION; CAMARENA HEALTH;

24    FOUNDATION; and DOES 81 through 85) had interacted and together and knew CAMARENA

25    would be handling certain patients, including shelter patients and others who are victims of

26    domestic violence, at a high risk of harm in moving between the parking lot and the clinic

27    entrance.

28    (12)    Despite this knowledge, said defendants were negligent and deliberately

— 29 —

Complaint for Equitable Relief and Damages

1    indifferent in constructing, maintaining, and operating the property for this adopted use.

2    151. Examples of simple and alternative means imposing a light burden that REAL

3    PROPERTY OWNER DEFENDANTS could have taken on a regular basis to protect the

4    movement of high-risk patients, any one of which would sufficiently reduced JULIO, SR'S

5    opportunity to approach undetected and have likely served to protect Calley and her children

6    from the harm suffered, include, but are not limited to:

7        (1) Failing to communicate with others to identify the high-risk patients.

8        (2) Failure to assess the degree of risk in moving such patients on a case-by-case basis.

9        (3) Failure to protect their arrival and departure, such as coordinating the time of their

10            movement between the parking area and the entrance so that a spotter and/or escort,

11            could be provided, a measure that would have taken only about a minute to

12            accomplish.

13       (4) Failure to provide such patients with an alternative entrance, such as the rear entrance.

14       (5) Alternatively, failure to provide the clinic with a protected passenger drop off area,

15            whether temporary or permanent.

16       (6)    Failure to adopt policies, practices, and procedures, backed by employee and/or

17            tenant training, to implement at least one of these measures, including at least

18            those of the least burden.

19    152. Alternatively, on the date of the subject incident and on other occasions involving high-

20    risk patients of the clinic, said REAL PROPERTY OWNER DEFEDNDANTS could have hired

21    a temporary security guard to protect movements in and out of the building.

22    153. Upon arrival, the van operator parked an unsafe distance from the front entrance, thus

23    providing JULIO, SR. and AIDING AND ABETTING DEFENDANTS a means of spotting

24    Calley and at least one of her children (that accompanied her) as they exited the van and walked

25    to the building.

26    154. During this time, the operator of the van left to get gas with at least one of the boys,

27    negligently giving up the advantage of stacking out a position close to the door and maintaining

28    a security watch for JULIO, SR.

Complaint for Equitable Relief and Damages

155. When she returned to the health center's parking lot to continue waiting for Calley and JG2, she observed JULIO, SR.

156. Despite the operator's knowledge of JULIO, SR'S credible threat to cause Calley and the children harm, she took no measures to warn Calley, no measures to protect Calley's exit from the building, and no measures to seek help.

157. Also, despite the known threat, the operator of the van deliberately chose to park an unsafe distance from CAMARENA FQHC's entrance, thereby providing JULIO, SR. with a greater opportunity to approach Calley in secret.

158. Upon completing the medical appointment, staff instructed Calley to leave. Despite FQHC's knowledge of the known threat, it deliberately failed to provide Calley and her two children (that then accompanied her in the clinic) with security to escort her back to the van nor the option to use the rear entrance, etc.

159. The van operator made no attempt to warn Calley and her son, to retrieve them quickly and evade the scene, to come between them and JULIO, SR., etc. She took no action but simply watched the situation unfold.

160. Calley and JG2 walked directly to the parked van. When she opened the van's side door, she was neither aware of JULIO, SR'S presence in the parking lot nor his approach.

161. While still holding JG2's hand, Calley reached inside to adjust the two-year-old JG1's baby seat, and then turned around to pick up JG2, only then making initial eye contact with JULIO, SR. and learning of his presence, and crying out "No!"

162. She immediately grabbed JG2 and turned to put him in the van, only to have JULIO, SR. shoot her in the back with a 380-semiautomatic handgun. When he then threatened to shoot the THREE SONS, Calley recovered only enough to throw JG2 into the van and fling herself across THREE SONS to shield them, causing them personal and bodily injury in the process.

163. JULIO, SR. then shot her two to three more times spraying her fluids over all over THREE SONS and forcing them to watch her laying there bleeding and unconscious.

164. He fled the scene.

165. The operator then failed to seek prompt medical help for Calley and THREE SONS and

Complaint for Equitable Relief and Damages

1    failed to call for an ambulance immediately.

2    166.  On the date of THE SUBJECT INCIDENT, the CAMARENA HEALTH had a closed-

3    circuit television (CCTV) system that captured these events, but to this day, various

4    DEFENDANTS have failed and refused to honor the request of Calley's relatives to release this

5    footage.

6    167.  JULIO, SR. was tried before a jury for causing Calley's death and was convicted.

7    168.  THREE SONS suffered recoverable damages, including, but not limited to, PERSONAL

8    INJURY DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL

9    ECONOMIC AND NON-ECONOMIC DAMAGES, all as alleged supra at paragraphs 66, 67,

10   68, respectively, and MINORS have suffered WRONGFUL DEATH DAMAGES and

11   SURVIVORSHIP DAMAGES, as alleged supra at paragraphs 69 and 70, respectively.

12   169.  MINORS have a CLAIM FOR FEES AND COSTS as alleged in paragraph 72.

13   170.  The conduct of the PRIVATE SUBCONTRACTOR DEFENDANTS; JULIO, SR.; and

14   AIDING AND ABETTING DEFENDANTS, including that of their employees and agents, was

15   malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of

16   Calley Garay, here heirs, her estate, and the MINORS, entitling them to an award of

17   EXEMPLARY DAMAGES as alleged in paragraph 71.

18

19   **D.  <u>Sequestration and Denial of Medical Care</u>**

20   171.  Immediately upon learning of Calley's murder on July 14, 2020, third party Sarah

21   Rodriguez went to the scene of the tragedy, arriving before Child Protective Services. She was

22   able to give comfort and assistance to THREE SONS.

23   172.  THREE SONS requested to stay with Rodriguez and her husband, Pete Rodriguez, and

24   her daughters. Rodriguez agreed that the program of the Child Welfare Services (CWS - which,

25   on information and belief, is a program under the County's Department of Social Services),

26   would put them in protective custody until JULIO, SR. was arrested.

27   173.  On July 16, 2021, the CWS social worker asked Rodriguez to inform THREE SONS that

28   their mother was dead so that the information would come from someone they loved and trusted.

174. Calley had understood the lethality of her relationship with JULIO SR. and had anticipated a need for the boys to go to a safe home.

175. Prior to her murder she had told her father that should anything happen to her, she wanted Rodriguez to care for the boys.

176. Mr. and Mrs. Rodriguez worked on their Resource Family Approval process to obtain placement of the boys.

177. THREE SONS were placed with a confidential foster family to ensure their safety during the immediate aftermath of the murder.

178. Because the GOVERNMENTAL DEFENDANTS have placed THREE SONS in foster care, and because they control their medical own care, they have become the wards of the GOVERNMENTAL DEFENDANTS.

179. The Rodríguezes had custody of the boys every other weekend from Friday to Sunday. They worked collaboratively with the foster family to ensure the boys' emotional and physical needs.

180. However, in September of 2020, CWS removed the boys from the foster home and placed them with JULIO GARAY, JR., and his girlfriend.

181. On or about November 19, 2020, CWS reduced the Rodríguezes visitation weekends to once per month.

182. Immediately, the Rodríguezes noticed a change in the boys' behavior upon moving to GARAY, JR's home. They became aggressive toward each other and dysregulated.

183. GARAY, JR has a history of domestic violence against a former girlfriend, and mother of his child, including a conviction. In family court related to another former girlfriend, and mother of another child, he was ordered to take a 52-week battering program.

184. On January 8, 2021, when the boys arrived for their visit with the Rodríguezes, they observed bruises all over the youngest boy's body. There were bruises in the shape of fingerprints on both wrists and arms as well as bruises on the side of his cheek.

185. On February 12, 2021, when the boys arrived for their visit with the Rodríguezes, they observed bruises on the youngest boy's arm and forehead.

Complaint for Equitable Relief and Damages

186. On March 12, 2021, when the boys arrived for their visit with the Rodríguezes, they observed bruises all over all three boys' arms and legs.

187. On April 9, 2021, when the boys arrived for their visit with the Rodríguezes, they observed bruises all over all three boys' arms and legs. Two boys had scratches on their faces.

188. On June 11, 2020, when the boys arrived for their visit with the Rodríguezes, they observed bruises on the youngest boy's right side of his face as well as the eyelid on the opposite side of his face.

189. On information and belief, their receipt of this physical and mental abuse continues to this day.

190. As a direct and proximate result of these affirmative failures to act with deliberate indifference to the probable result, THREE SONS have suffered further recoverable PERSONAL INJURY DAMAGES; as alleged supra at paragraph 66, and also seek recovery of their CLAIM FOR ATTORNEY'S FEES AND COSTS.

191. Despite raising these safety concerns with the social worker and CWS, the Rodríguezes have been denied assurances of the safety of THREE SONS, nor an explanation why the Rodríguezes could not provide them a safe and loving home.

192. Beginning on or about July 14, 2021, COUNTY GOVERNMENT DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS failed and refused to employ or allow the boys treatment care examination by competent providers to provide psychotherapy and treatment for the mental disorders and mental problems of THREE SONS. Thereupon, and continuing until the present, defendant did not provide such therapy and treatment to the THREE SONS.

193. In the course of the boy's confinement with JULIO, JR. and his abused girlfriend COUNTY GOVERNMENT DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS and their non-medical employees knew, or in the exercise of reasonable care should have known, that THREE SONS were suffering abuse and injury, and that they needed early and competent psychological care therapy and treatment and to prevent the substantial risk of them experiencing long-term psychological harm.

194. Despite this knowledge, the non-medical personnel of STATE GOVERNMENT

Complaint for Equitable Relief and Damages

DEFENDANTS; COUNTY GOVERNMENT DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS intentionally, recklessly, negligently, and with deliberate indifference, failed to take appropriate measures to both protect them and to provide such care, and to appropriately place them in a safe home, caused in part by the STATE GOVERNMENT DEFENDANTS' failure to properly guide, train, monitor, instruct, and supervise COUNTY GOVERNMENT DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS in the performance of their duties as required by the laws and regulations applicable to the performance of their duties.

195.  The foregoing actions against THREE SONS is in direct violation of their rights to due process under the Fourteenth Amendment and their right as wards of the state to be free from cruel and unusual punishment under the Eighth Amendment.

196.  As a direct and proximate result of these actions, THREE SONS have suffered further recoverable damages and other relief, including, but not limited to, PERSONAL INJURY DAMAGES as alleged supra at paragraphs 66, and also seek recovery of their CLAIM FOR ATTORNEY'S FEES AND COSTS as alleged in paragraph 72.

197.  The conduct of the PRIVATE SUBCONTRACTOR DEFENDANTS; JULIO, SR.; and AIDING AND ABETTING DEFENDANTS, including that of their employees and agents, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Calley Garay, here heirs, her estate, and the MINORS, entitling them to an award of EXEMPLARY DAMAGES as alleged in paragraph 71.

### E.  Fraudulent Conveyance.

198.  On the DATE OF PERMANENT SEPARATION, JULIO became indebted to Calley and THREE SONS for family support as well as to Calley for her share of the community property, and in an amount according to proof, but of no less than $3,500 per month.

199.  On the DATE OF THE SUBJECT INCIDENT, JULIO became indebted to MINORS, both in their individual capacities and as the sole heirs and successor's to their mother's estate, in a sum according to proof, but in an amount of no less than $10,000,000, and for directly and

1   proximately causing THREE SONS their PERSONAL INJURY DAMAGES; SERIOUS

2   EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMIC

3   DAMAGES, as alleged supra at paragraphs 66 through 68, as well as causing MINORS their

4   WRONGFUL DEATH DAMAGES, including, but not limited to, as alleged supra at paragraph

5   69, all in amounts according to proof.

6       200.  JULIO has paid neither the whole nor any part of these sums.

7       201.  The sums remain owing together with interest thereon at the legal rate of interest per

8   annum from the DATE OF SEPARATION and from the DATE OF THE SUBJECT INCIDENT,

9   as applicable.

10      202.  On both of the aforementioned dates, JULIO and Calley were the true owners of the

11  SUBJECT RESIDENCE described supra at paragraph 63.

12      203.  Calley and JULIO resided at the SUBJECT RESIDENCE with THREE SONS during the

13  marriage, except for the brief time they were separated before her untimely death.

14      204.  In 1998, JULIO had purchased the property and utilized his mother, ALVARADO, to

15  record title in her name, and as a strawman to hide the residence from his creditors. However,

16  she never possessed equitable title, as he never delivered possession of the property to her, never

17  paid her rent or any other consideration, but kept the property to himself, occupying it and paying

18  all incidents of ownership, including, but not limited to, taxes, insurance, and maintenance. At

19  all times JULIO remained the putative or real owner, and at no time did ALVARADO experience

20  any of the enjoyments and burdens of ownership.

21      205.  MINORS are informed and believe and thereon allege that this transfer was made with

22  an actual intent to hinder, delay, or defraud JULIO'S then and future known creditors.

23      206.  At all times relevant, ALVARADO never held any beneficial interest in the Property.

24      207.  ALVARADO served only as a strawman, or intermediate transferee, holding title in her

25  name as a sham transaction, and solely in aid of JULIO's effort to hide his ownership from known

26  creditors, including Calley and the MINORS.

27      208.  On or about the very DATE OF THE SUBJECT INCIDENT – when Calley was

28  negligently shot, defendant JULIO rushed the transfer of the SUBJECT RESIDENCE by

— 36 —

Complaint for Equitable Relief and Damages

1   directing ALVARADO to deed the Property to his daughter, AMANDA, rushing the filing of a

2   transfer deed, recorded at Document No. 2020016026 in the Official Records in the Office of the

3   County Recorder of Madera County.

4   209.  In exchange for the aforementioned transfer, ALVARADO received no consideration at

5   the time of the transfer or otherwise, and the value of the SUBJECT RESIDENCE was not less

6   than $65,000.00. Thus, neither ALVARADO as the holder of recorded title nor JULIO, SR. as

7   the true equitable owner received reasonably equivalent value in exchange for the property.

8   210.  Also, the face of this deed provides evidence that no consideration was paid, and in fact,

9   there was none.

10   211.  On information and belief, the signature or signatures on this deed were forged and/or the

11   deed was never delivered.

12   212.  A true and correct copy of the deed is attached hereto as **Exhibit 1**.

13   213.  Each of these alleged transfers were a sham. On information and belief, the signature or

14   signatures on this deed were forged, the deeds were never delivered, and/or JULIO has remained

15   in constructive possession and control, paying all expenses related to the property, including, but

16   not limited to, the mortgage, insurance, taxes, maintenance, repairs, and improvements.

17   214.  At all times relevant, AMANDA has never held any beneficial interest in the Property.

18   215.  AMANDA is serving only as a strawman, or intermediate transferee, holding title in her

19   name as a sham transaction, and solely in aid of JULIO's effort to hide his ownership from known

20   creditors, including Calley and MINORS.

21   216.  MINORS are further informed and believe that a precipitating cause of the

22   aforementioned transfer was that JULIO; ALVARADO; AMANDA and DOES 71 through 75,

23   Inclusive (hereafter, CONSPIRING DEFENDANTS) knew or suspected either that Calley's

24   claims for divorce and/or family support were eminent (or a claim for support by the County as

25   a claim for reimbursement), and/or that Calley's death was eminent, by violence or otherwise,

26   and therefore a claim by Calley's estate and the MINORS was also eminent. (Hereafter, the

27   claims of these creditors shall be referred to alternatively and collectively, as KNOWN CLAIMS

28   or KNOWN CREDITORS.)

Complaint for Equitable Relief and Damages

217. At all times mentioned herein, CONSPIRING DEFENDANTS knew that the KNOWN CLAIMS could be satisfied in whole or in part out of the SUBJECT RESIDENCE being transferred.

218. CONSPIRING DEFENDANTS did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and agreement alleged above.

219. MINORS are further informed and believe and thereon allege that CONSPIRING DEFENDANTS entered the conspiracy and committed their overt acts in furtherance of the conspiracy with an actual intent to hinder, delay, and/or defraud JULIO'S then and future creditors, including, but not limited to, KNOWN CREDITORS in the collection of their KNOWN CLAIMS.

220. MINORS are further informed and believe and thereon allege that Notwithstanding this knowledge, CONSPIRING DEFENDANTS intentionally, willfully, fraudulently, and maliciously transferred the SUBJECT RESIDENCE to defraud and oppress KNOWN CREDITORS, including, but not limited to, MINORS, who are therefore entitled to exemplary and punitive damages under Code of Civ. Proc. Section 3294.

221. As a direct and proximate result of these wrongful acts, MINORS have been generally damaged in a sum according to proof at trial, but in an amount not less than the transferred asset.

## CAUSES OF ACTION

**I.    FIRST CAUSE OF ACTION**

**Constitutional Violations**

### Count 1

Due Process

Fourteenth Amendment

222. Plaintiff incorporates by reference each of the factual allegations made in paragraphs 1 through 233, supra, and as if fully restated hereafter.

223. As previously alleged, the relevant services of PRIVATE SUBCONTRACTOR DEFENDANTS were at the behest of COUNTY DEFENDANTS and in performance of services

— 38 —

1    traditionally performed by the State and Counties as government services.

2        224. Acting under color of state law, INCLUDED DEFENDANTS placed THREE SONS and

3    Calley in a position of actual, particularized danger (greater than that they already faced) when

4    they took the stated affirmative acts, which also amounted to the official policy of

5    GOVERNMENTAL DEFENDANTS, as herein alleged.

6        225. Under the Fourteenth Amendment, Calley and THREE SONS had a clear constitutional

7    right to be free from the acts of COUNTY DEFENDANTS that affirmatively placed them in this

8    position of danger.

9        226. COUNTY DEFENDANTS knew the risks of exposing Calley and THREE SONS in this

10   manner but still exposed them to that risk.

11       227. Therefore, COUNTY DEFENDANTS acted with deliberate indifference to these known

12   and obvious dangers, and therefore acted with a deliberate indifference shocks the conscience in

13   the constitutional sense.

14       228. As a direct, proximate and highly foreseeable result of the particularized risk and

15   affirmative actions, THREE SONS suffered recoverable damages and other relief, including,

16   which but not limited to, PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL

17   DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES,

18   all as alleged supra at paragraphs 66, 67, 68, respectively, and MINORS have suffered

19   WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES, as alleged supra at

20   paragraphs 69 and 70, respectively.

21       229. MINORS have a CLAIM FOR FEES AND COSTS as alleged in paragraph 72.

22       230. The conduct of the PRIVATE SUBCONTRACTOR DEFENDANTS in this respect,

23   including that of their employees and agents, was malicious, wanton, oppressive, and

24   accomplished with a conscious disregard for the rights of Calley Garay, here heirs, her estate,

25   and the MINORS, entitling them to an award of EXEMPLARY DAMAGES as alleged in

26   paragraph 71.

27       Wherefore, MINORS pray damages and other relief as hereinafter stated.

28

Complaint for Equitable Relief and Damages

1

**Count 2**

2

Due Process

3

Art. 1, § 7

4    231.  Plaintiff incorporates by reference each of the factual allegations made in paragraphs 1

5    through 243, supra, and as if fully restated hereafter.

6    232.  This count includes COUNTY DEFENDANTS and PRIVATE SUBCONTRACTOR

7    DEFENDANTS. Hereafter within this count, the included defendants shall be referred to as

8    INCLUDED DEFENDANTS.

9    233. As previously alleged, the relevant services of PRIVATE SUBCONTRACTOR

10   DEFENDANTS were at the behest of COUNTY DEFENDANTS and in performance of services

11   traditionally performed by the State and Counties as government services.

12   234.  Acting under color of state law, INCLUDED DEFENDANTS placed THREE SONS and

13   Calley in a position of actual, particularized danger (greater than that they already faced) when

14   they took the stated affirmative acts, which also amounted to the official policy of

15   GOVERNMENTAL DEFENDANTS, as alleged.

16   235. Under Article 1, Section 7 of the Constitution of the State of California, Calley and

17   THREE SONS had a constitutional right to be free from a GOVERNMENT ACTOR

18   affirmatively placing them in a position of actual, particularized danger (that was greater than

19   that they already faced) if the GOVERNMENT ACTOR acted with deliberate indifference to a

20   known or obvious danger.

21   236. INCLUDED DEFENDANTS knew the risks of exposing Calley and THREE SONS in

22   this manner but still exposed them to that risk.

23   237. Therefore, INCLUDED DEFENDANTS acted with deliberate indifference to these

24   known and obvious dangers, and therefore acted with a deliberate indifference shocks the

25   conscience in the constitutional sense.

26   238. As a direct, proximate and highly foreseeable result of the particularized risk and

27   affirmative actions, THREE SONS suffered recoverable damages and other relief, including,

28   which but not limited to, PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL

Complaint for Equitable Relief and Damages

DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES, all as alleged supra at paragraphs 66, 67, 68, respectively, and MINORS have suffered WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES, as alleged supra at paragraphs 69 and 70, respectively.

239. MINORS have a CLAIM FOR FEES AND COSTS as alleged in paragraph 72.

240. The conduct of the PRIVATE SUBCONTRACTOR DEFENDANTS in this respect, including that of their employees and agents, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Calley Garay, here heirs, her estate, and the MINORS, entitling them to an award of EXEMPLARY DAMAGES as alleged in paragraph 71.

Wherefore, MINORS pray for damages and other relief as hereinafter stated.

## Count 3

### Grossly Negligent Failure to Train

### in Deprivation of Constitutional Rights

### 42 USC § 1983

241. Plaintiff incorporates by reference each of the factual allegations made in paragraphs 1 through 253 supra, and as if fully restated hereafter.

242. This count includes COUNTY DEFENDANTS and their PRIVATE SUBCONTRACTOR DEFENDANTS. Hereafter within this count, the included defendants shall be referred to as INCLUDED DEFENDANTS.

243. Plaintiff incorporates by reference, and as if fully restated hereafter, the WRONGFUL ACTS of INCLUDED DEFENDANTS as generally alleged in paragraphs 73 through 178.

244. As a part of this incorporation and restatement, MINORS rely upon the negligent supervision allegations at paragraphs 137 through 149.

245. Plaintiff incorporates by reference all the essential allegations and the resulting deprivations of right under the Fourteenth Amendment and California Constitution, as alleged above in Counts 1 and 2.

246. As a direct, proximate and highly foreseeable result of the particularized risk and affirmative actions, THREE SONS suffered recoverable damages and other relief, including, which but not limited to, PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES, all as alleged supra at paragraphs 66, 67, 68, respectively, and MINORS have suffered WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES, as alleged supra at paragraphs 69 and 70, respectively.

247. MINORS have a CLAIM FOR FEES AND COSTS as alleged in paragraph 72.

248. The conduct of the PRIVATE SUBCONTRACTOR DEFENDANTS in this respect, including that of their employees and agents, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Calley Garay, here heirs, her estate, and the MINORS, entitling them to an award of EXEMPLARY DAMAGES as alleged in paragraph 71.

249. In addition, this count seeks declaratory and injunctive relief against KIM JOHNSON and MICHELLE BASS. Plaintiff is informed and believes that JOHNSON, BASS, and their predecessors, failed to provide adequate supervisory control over the actions of the Department of Social Services of Madera County (herein "DSS"), and their agents, employees, contractors and supervisors in regard to adequate training, supervision, equipment, planning, oversight, and administration; and by failing to adequately investigate background, training and experience of DSS and its subcontractors, agents, employees and supervisors; failed to adequately train DSS and its subcontractors, agents, employees and supervisors in identifying threats of force or violence to persons in need of protection in its shelter and care; and failed to adequately train DSS and its subcontractors, agents, employees and supervisors in the provision of protection of persons in need of protection in its shelter and care who are exposed to objectively apparent danger from known individuals.

250. Over time, these non-observance of supervision became widespread, permanent, and well-settled and morphed into a common understanding about how to react and be indifferent to similar situations.

Complaint for Equitable Relief and Damages

1    Wherefore, MINORS pray for damages and other relief as hereinafter stated.

2

3                                    **Count 4**

4                    Unconstitutional Customs, Practices and Policies

5                                    42 USC § 1983

6    251.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1

7    through 264, supra, and as if fully restated hereafter.

8    252. This      count     includes    COUNTY     DEFENDANTS     and     their    PRIVATE

9    SUBCONTRACTOR DEFENDANTS. Hereafter within this count, the included defendants shall

10   be referred to as INCLUDED DEFENDANTS.

11   253.  Plaintiff incorporates by reference, and as if fully restated hereafter, the WRONGFUL

12   ACTS of INCLUDED DEFENDANTS as generally alleged in paragraphs 73 through 178.

13   254.  As a part of this incorporation and restatement, Plaintiff relies upon the facts concerning

14   a negligent supervision, a negligent lack of training, and the wrongful custom, policy, practice,

15   and procedures, contained at paragraphs 137 through 149.

16   255. Plaintiff  incorporates  by  reference  all  the  essential  allegations  and  the  resulting

17   deprivations of right under the Fourteenth Amendment and California Constitution, as alleged

18   supra in Counts 1 and 2.

19   256.  As a direct, proximate and highly foreseeable result of the particularized risk and

20   affirmative actions, THREE SONS suffered recoverable damages and other relief, including,

21   which but not limited to, PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL

22   DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES,

23   all as alleged supra at paragraphs 66, 67, 68, respectively, and MINORS have suffered

24   WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES, as alleged supra at

25   paragraphs 69 and 70, respectively.

26   257.  MINORS have a CLAIM FOR FEES AND COSTS as alleged in paragraph 72.

27   258.  The conduct of the PRIVATE SUBCONTRACTOR DEFENDANTS in this respect,

28   including that of their employees and agents, was malicious, wanton, oppressive, and

1   accomplished with a conscious disregard for the rights of Calley Garay, here heirs, her estate,

2   and the MINORS, entitling them to an award of EXEMPLARY DAMAGES as alleged in

3   paragraph 71.

4      Wherefore, MINORS pray for damages and relief as hereinafter stated.

5

6   **Count 5**

7   Sequestration and Denial of Medical Care

8   42 USC § 1983

9   259. THREE SONS incorporate by reference each of the factual allegations made in

10  paragraphs 1 through 272, supra, and as if fully restated hereafter.

11  260. The damage claims of this cause of action proceed against COUNTY DEFENDANTS;

12  and PRIVATE SUBCONTRACTOR DEFENDANTS.

13  261. The claims for injunctive and declaratory relief proceed against GOVERNMENT

14  DEFENDANTS.

15  262. THREE SONS reincorporate as if fully restated hereafter the factual allegations at

16  paragraphs 183 through 209.

17  263. Plaintiff alleges that the harms suffered as detailed in paragraphs 183 through 209 were

18  caused by GARAY, JR. and DOES 86 through 90.

19  264. THREE SONS reallege that as a result of these sequestrations and denials of medical

20  care, they have faced and continue to face a serious risk of medical need and substantial risk of

21  serious harm; and that their legal interests are at serios risk of being prejudiced; and that despite

22  these risks GOVERNMENT DEFENDANTS have deliberately failed to address these needs,

23  deliberately ignored the risks of harm, and with indifference to the interest of THREE SONS and

24  for sake of their own.

25  265. Unless this Court enjoins the continuing conduct of GOVERNMENT DEFENDANTS

26  and declares it unlawful, THREE SONS shall continue to experience these harms.

27  266. As a direct and proximate result of these affirmative failures to act with deliberate

28  indifference to the probable result, THREE SONS have suffered further recoverable PERSONAL

INJURY DAMAGES; as alleged supra at paragraphs 66, 202, and 208, and also seek recovery of their related CLAIM FOR ATTORNEY'S FEES AND COSTS as alleged at paragraphs 72 and 208.

267.  The conduct of the PRIVATE SUBCONTRACTOR DEFENDANTS in this respect, including that of their employees and agents, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Calley Garay, here heirs, her estate, and the MINORS, entitling them to an award of EXEMPLARY DAMAGES as alleged in paragraphs 71 and 209.

Wherefore, MINORS pray for the relief as hereinafter stated.



II.  **SECOND CAUSE OF ACTION**

**Negligence and Gross Negligence**

(Cal. Civil § 1714)

**Count 1**

Negligence

(Cal. Civil § 1714)

268.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1 through 281, supra, and as if fully restated hereafter.

269.  This count includes COUNTY GOVERNMENT DEFENDANTS; PRIVATE SUBCONTRACTORS DEFENDANTS; JULIO, SR.; AIDING AND ABETTING DEFENDANTS; and ABUSING DEFENDANTS. Hereafter within this count, the included defendants shall be referred to as INCLUDED DEFENDANTS.

270.  That the WRONGFUL ACTS of INCLUDED DEFENDANTS, as specifically alleged as against each of them, were negligent.

271.  As a direct and proximate result, MINORS suffered harmed by this conduct as alleged.

272.  The negligence of the INCLUDED DEFENDANTS was a substantial factor in causing this harm.

273. As a direct, proximate and highly foreseeable result of the particularized risk and affirmative actions, THREE SONS suffered recoverable damages and other relief, including, which but not limited to, PERSONAL INJURY DAMAGES as alleged at paragraphs 66, 202, and 208; and SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES, all as alleged supra at paragraph 68, respectively, and MINORS have suffered WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES, as alleged supra at paragraphs 69 and 70, respectively.

Wherefore, MINORS pray for the relief as hereinafter stated.

## Count 2

### Negligent Infliction of Serious Emotional Distress to Bystanders

### (Cal. Civil § 1714)

274. THREE SONS incorporate by reference each of the factual allegations made in paragraphs 1 through 287, supra, and as if fully restated hereafter, and including, but not limited to, the wrongful acts of those of the defendants that negligently caused Calley's death and the negligent placing of THREE SONS at the scene.

275. This count includes COUNTY GOVERNMENT DEFENDANTS; PRIVATE SUBCONTRACTORS DEFENDANTS; JULIO, SR.; and AIDING AND ABETTING DEFENDANTS. Hereafter within this count, the included defendants shall be referred to as INCLUDED DEFENDANTS.

276. That the WRONGFUL ACTS of INCLUDED DEFENDANTS were negligent in proximately and directly causing the harm and death, as described.

277. THREE SONS presence at the scene was in close proximity to the hereinabove-described death of their mother.

278. They personally witnessed and perceived both her injury and her death.

279. They were splattered with her blood and bodily material.

280. As a direct, proximate, and highly foreseeable result of these wrongful acts and omissions, Calley suffered a wrongful and witnessed death, which lead directly and proximately to THREE SONS suffering recoverable damages and other relief, including, which but not limited to,

Complaint for Equitable Relief and Damages

1   SERIOUS EMOTIONAL DISTRESS DAMAGES as alleged in paragraph 67.

2   281.  The conduct of the implicated defendants in causing Calley's death and exposing her and

3   THREE SONS to danger was a substantial factor in causing these damages to THREE SONS.

4   Wherefore, they pray for relief as hereinafter stated.

5

6   **Count 3**

7   Premises Liability - Shelter

8   (Cal. Civil § 1714)

9   282.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1

10   through 295, supra, and as if fully restated hereafter.

11   283.  At all relevant times, SHELTER OWNING DEFENDANTS owned, leased, occupied,

12   and controlled the SHELTER LOCATION as alleged supra at paragraphs 53 and 64.

13   284.  As alleged, these Defendants were negligent and grossly negligent in the use or

14   maintenance of the properties comprising the SHELTER LOCATION including, but not limited

15   to, their wrongful acts and omissions on the DATE OF THE SUBJECT INCIDENT of loading

16   Calley and THREE SONS into the van at a non-secure and non-secretive location on the property,

17   as alleged supra at paragraph 136.

18   285.  These wrongful acts and omissions were a substantial factor in causing Calley's death,

19   and the personal injury and bystander damages of THREE SONS.

20   286.  As a direct and proximate result of these wrongful acts and omissions, Calley suffered a

21   wrongful and witnessed death, which lead directly and proximately to THREE SONS suffering

22   recoverable damages and other relief, including, which but not limited to, PERSONAL INJURY

23   DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC

24   AND NON-ECONOMIC DAMAGES, all as alleged supra at paragraphs 66 through 68, as well

25   as the MINORS suffering WRONGFUL DEATH DAMAGES alleged supra at paragraph 69,

26   and SURVIVORSHIP DAMAGES as alleged at paragraph 70.

27   Wherefore, MINORS pray for relief as hereinafter stated.

28

Complaint for Equitable Relief and Damages

**Count 4**

Premises Liability - Clinic

(Cal. Civil § 1714)

(As to DEFENDANTS BRONCO; ASSOCIATOIN; CAMARENA HEALTH;

FOUNDATION and DOES)

287.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1 through 300, supra, and as if fully restated hereafter.

288.  At all relevant times, REAL PROPERTY DEFENDANTS owned, leased, occupied, and controlled the SUBJECT PROPERTY, and as alleged supra at paragraphs 49 and 62.

289. As alleged, these Defendants were negligent and grossly negligent in the use or maintenance of the SUBJECT PROPERTY.

290.  This negligence was a substantial factor in causing Calley's death, and the personal injury and bystander damages of THREE SONS.

291.  As a direct and proximate result of these wrongful acts and omissions, Calley suffered a wrongful and witnessed death, which lead directly and proximately to THREE SONS suffering recoverable damages and other relief, including, which but not limited to, PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES, all as alleged supra at paragraphs 66 through 68, as well as the MINORS suffering WRONGFUL DEATH DAMAGES, including, but not limited to, as alleged supra at paragraph 69.

Wherefore, MINORS pray for relief as hereinafter stated.


**Count 5**

Motor Vehicle

(Cal. Civil § 1714)

292.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1 through 305, supra, and as if fully restated hereafter.

293.  As a direct and proximate result of the wrongful acts and omissions of the MOTOR

VEHICLE DEFENDANTS, as alleged in the above paragraphs including, inter alia, paragraphs 150 (identifying possible parties who loaded Calley and her Children at the shelter), 154 through 160 (identify the possible parties whose employee transported them and the negligent actions en route), 161 (identifying the potential parties who were negligent in securing a safe alternative entrance into the clinic), and 165 through 169, 171 and 177 (identifying the potential parties who were negligent through the operator at the time of retrieval), Calley suffered a wrongful and witnessed death, which lead directly and proximately to THREE SONS suffering recoverable damages and other relief, including, which but not limited to, PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES, all as alleged supra at paragraphs 66 through 68, as well as the MINORS suffering WRONGFUL DEATH DAMAGES, including, but not limited to, as alleged supra at paragraph 69.

Wherefore, MINORS pray for relief as hereinafter stated.

**Count 6**

Sequestration, Abuse and Denial of Medical Care

(Cal. Civil § 1714)

294. MINORS incorporate by reference each of the factual allegations made in paragraphs 1 through 307, supra, and as if fully restated hereafter.

295. In this count, the INCLUDED DEFENDANTS are COUNTY GOVERNMENT DEFENDANTS; PRIVATE SUB CONTRACTOR DEFENDANTS; and ABUSING DEFENDANTS.

296. THREE SONS reincorporate as if fully restated hereafter the factual allegations at paragraphs 183 through 209 (under the subheading "*Sequestration and Denial of Medical Care*"), as if fully restated hereafter.

297. Plaintiff alleges that the harms suffered as detailed in paragraphs 183 through 209 were caused in part by GARAY, JR. and DOES 86 through 90.

298. Plaintiff further incorporates by reference, and as if fully restated hereafter the contents

1    of Count 5 of the Section 1983 claims found at page 44, paragraphs 273 through 281, and as if

2    fully restated hereafter.

3    299.  As a direct and proximate result of the wrongful acts and omissions of INCLUDED

4    DEFENDANTS, THREE SONS suffered and are continuing to suffer recoverable damages and

5    other relief, including, which but not limited to, THREE SONS have suffered further recoverable

6    PERSONAL INJURY DAMAGES; as alleged supra at paragraphs 66, 202, and 208.

7    Wherefore, MINORS pray for relief as hereinafter stated.

8

9                                          **Count 7**

10                        Gross Negligence with Deliberate Indifference

11                                    (Cal. Civil § 1714)

12   300.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1

13   through 313, supra, and as if fully restated hereafter.

14   301.  Plaintiff incorporates by reference as if fully restated hereafter the entirety of the legal

15   allegations of prior counts for negligence (i.e., counts 1 through 6) at paragraphs 282 through

16   310, and against the respective private defendants alleged in those counts, and as if fully restated

17   hereafter.

18   302.  Each of the negligent acts of these various defendants as alleged, including that of their

19   employees and agents, was grossly negligent, and done maliciously, wantonly, oppressively,

20   and/or accomplished with a conscious disregard for the rights of Calley Garay, her heirs, her

21   estate, and the MINORS, and has caused MINORS to suffer serious emotional distress, entitling

22   them to an award of EXEMPLARY DAMAGES as alleged in paragraphs 71, 182, and 209.

23   Wherefore, MINORS pray for relief as hereinafter stated.

24

25

26

27

28

Complaint for Equitable Relief and Damages

1   **III.  THIRD CAUSE OF ACTION**

2       **Wrongful Death**

3       Code of Civ. Proc. § 377.60

4   303.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1

5   through 316, supra, and as if fully restated hereafter.

6   304.  This cause of action is against COUNTY GOVERNMENT DEFENDANTS; PRIVATE

7   SUBCONTRACTOR    DEFENDANTS;    JULIO,    SR.;    AIDING    AND    ABETTING

8   DEFENDANTS and the related DOES as previously pled, hereafter referred to as WRONGFUL

9   DEATH DEFENDANTS.

10  305.  MINORS seek relief under Cal. Code. Civ. Proc. § 377.60 (a), permitting a cause of action

11  for the death of a person caused by the wrongful act or neglect of another ... by the decedent's

12  surviving children or by the decedent's personal representative on their behalf.

13  306.  MINORS reassert the facts at paragraphs 17 and 23, supra, establishing their standing to

14  bring this cause of action.

15  307.  The  combined  wrongful  acts  and  omissions  of  the  WRONGFUL  DEATH

16  DEFENDANTS  as  described  above  in  this  complaint  directly  and  proximately  caused  the

17  wrongful death of Calley Garay, the decedent herein, on or about July 14, 2020.

18  308.  As a direct and proximate result of these wrongful acts and omissions, Calley suffered a

19  wrongful  death,  which  lead  directly  and  proximately  to  MINORS  suffering  WRONGFUL

20  DEATH DAMAGES, including, but not limited to, as alleged supra at paragraph 69.

21  309.  Each of the negligent acts of these various defendants as alleged, including that of their

22  employees and agents, was grossly negligent, and done maliciously, wantonly, oppressively,

23  and/or accomplished with a conscious disregard for the rights of Calley Garay, her heirs, her

24  estate, and the MINORS, and has caused MINORS to suffer serious emotional distress, entitling

25  them to an award of EXEMPLARY DAMAGES as alleged in paragraphs 71, 182, and 209.

26  Wherefore, MINORS pray for relief as hereinafter stated.

27

28

Complaint for Equitable Relief and Damages

1    IV.  **FOURTH CAUSE OF ACTION**

2        **Privacy Violation for Disclosure of Medical Information**

3        (Civil Code §§ 56 thru 56.37)

4    310.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1

5    through 323, supra, and as if fully restated hereafter.

6    311.  INCLUDED    DEFENDANTS    are    COUNTY    DEFENDANTS;    PRIVATE

7    SUBCONTRACTOR DEFENDANTS; and ELENEZ.

8    312.  The actions of INCLUDED DEFENDANTS in disclosing the confidential medical

9    information without authority directly and proximately resulted in Calley's wrongful death,

10   THREE SONS suffering actual and recoverable damages.

11   313.  Under Civil Code Section 56.35, MINORS seek:

12       a.  Recovery of actual damages, including, but not limited to, PERSONAL INJURY

13           DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL

14           ECONOMIC AND NON-ECONOMIC DAMAGES, all as alleged supra at

15           paragraphs 66 through 68, as well as the MINORS suffering WRONGFUL DEATH

16           DAMAGES, including, but not limited to, as alleged supra at paragraph 69.

17       b.  Punitive damages against PRIVATE SUBCONTRACTOR DEFENDANTS and

18           ELENEZ of $3,000.

19       c.  Reasonable statutory attorneys' fees of $1,000; and

20       d.  Costs of litigation.

21       e.  And other relief that the Court deems just and appropriate.

22   Wherefore, MINORS pray for relief as hereinafter stated.

23

24

25   V.  **FIFTH CAUSE OF ACTION**

26       **Survivorship**

27       (Cal. Civil § 3333)

28   314.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1

Complaint for Equitable Relief and Damages

through 327 , supra, and as if fully restated hereafter.

315.  The four minors DA; JG1; JG2; and JG3, are each successors in interest of their mother, Calley Garay, and succeed to this cause of action because there is no personal representative of her estate.

316.  They bring this cause of action in the capacity of successors in interest by and through their Guardian ad Litem.

317.  Their Guardian ad Litem has executed and filed herewith the declaration under penalty of perjury required by Code of Civil Procedure Section 377.32.

318.  The combined wrongful acts and omissions of the defendants as described above in this complaint proximately caused the wrongful death of Calley Garay, the decedent herein on or about July 14, 2020.

319.  A cause of action thereby arose in Calley's favor.

320.  As a proximate result, Calley suffered pain, injury, and humiliation from gunshot wounds prior to her death, and this caused her estate to incur medical care, final expenses, and funeral expenses, as well as special damages, including, but not limited to, medical and related expenses, loss of earnings, and damage to personal property.

321.  The alleged errors, actions and omission of the involved PRIVATE DEFENDANTS evidence oppression, fraud, and malice, and entitle MINORS to punitive damages under Code Civil Procedure § 3294.

Wherefore, MINORS pray for relief as hereinafter stated.

Complaint for Equitable Relief and Damages

## VI.  SIXTH CAUSE OF ACTION

### Fraudulent Conveyance

(All the below counts are brought against Defendants JULIO, SR.; ALVARADO; AMANDA; and DOES, who are hereafter referred to collectively as the CONSPIRING DEFENDANTS)

**Count 1**

California Voidable Transfers Act

Civil Code §§ 3439 et seq.

322.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1 through 335, supra, and as if fully restated hereafter.

323.  As a result of the charging allegations made supra at paragraphs 210 through 233, MINORS will prove:

    a.   MINORS have a right to payment from JULIO, SR. for child support, and from him for their respective claims of PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES; and WRONGFUL DEATH DAMAGES, as alleged supra at paragraphs 66 through 69, and in the amount according to proof, but exceeding the actual value of the house, which is no more than $150,000.

    b.   JULIO, SR. was at all times the full equitable owner, and actually performed the transfer of the SUBJECT RESIDENTIAL PROPERTY from strawman ALVARADO to AMANDA and DOES without receiving a reasonably equivalent value in exchange, or the transfers are on paper only and as a sham because JULIO, SR. never relinquished control of the property and has continued to bear all the expenses and obligations of it.

    c.   MINORS' right to payment from JULIO, SR. arose either before the conspiracy to perform these actual transfers or these sham transfers.

    d.   JULIO was insolvent at that time or became insolvent as a result of them or was attempting to portray an insolvency on papers.

1    e.   These acts were designed to deceive JULIO, SR'S creditors.

2    f.   MINORS were harmed because these transfers or sham transfers have defrauded,

3         hindered, and delayed their ability to collect on their KNOWN CLAIMS.

4    g.   The conduct of the CONSPIRING DEFENDANTS was a substantial factor in causing

5         this harm to MINORS.

6    324.  MINORS alleged under these facts that that CONSPIRING DEFENDANTS have created

7    a constructive trust holding the equitable title comprising the SUBJECT RESIDENCE, and that

8    the subject transfers are void.

9    Wherefore, MINORS pray for relief as hereinafter stated.

10

11                              **Count 2**

12                          Fraudulent Transfer

13                             Common Law

14    325.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1

15    through 338, supra, and as if fully restated hereafter.

16    326.  MINORS incorporate by reference the contents of paragraph 337, supra, as if fully

17    restated hereafter.

18    327.  MINORS alleged that under these facts the CONSPIRING DEFENDANTS have created

19    a constructive trust holding the equitable title comprising the SUBJECT RESIDENCE, and that

20    the subject transfers are void.

21    Wherefore, MINORS pray for relief as hereinafter stated.

22

23                              **Count 3**

24                           Constructive Trust

25                         Cal. Civil §§ 2223, 2224

26    328.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1

27    through 341, supra, and as if fully restated hereafter.

28    329.  MINORS incorporate by reference the contents of paragraph 337, supra, as if fully

— 55 —

Complaint for Equitable Relief and Damages

restated hereafter, and alleged that under these facts the CONSPIRING DEFENDANTS have created a constructive trust holding the equitable title comprising to SUBJECT RESIDENCE, and that the subject transfers are therefore void.

Wherefore, MINORS pray for relief as hereinafter stated.

**Count 4**

Conspiracy and Fraud

Civil Code §§ 1709, 1710, 1572 and 1573

330.  MINORS incorporate by reference each of the factual allegations made in paragraphs 1 through 343, supra, and as if fully restated hereafter.

331.  MINORS incorporate by reference the contents of paragraph 337, supra, as if fully restated hereafter, and alleged that under these same facts the CONSPIRING DEFENDANTS are jointly and severally liable for their conspiracy to commit fraud, and that the subject transfers are void.

Wherefore, MINORS pray for relief as hereinafter stated.

**PRAYER FOR RELIEF**

On behalf of the MINORS, PLAINTIFF prays that this court award damages and provide relief as follows:

I.    **For the First Cause of Action's Constitutional Violations, MINORS pray:**

A.   For Count 1's denial of due process in violation of the Fourteenth Amendment:

1.   Against COUNTY DEFENDANTS, award:

a.   THREE SONS the PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMICAL DAMAGES alleged in ¶¶ 66 through 68, respectively.

b.   MINORS the WRONGFUL DEATH DAMAGES and SURVIVORSHIP

1   DAMAGES alleged in ¶¶ 69 through 70, respectively.

2       c.   MINORS the CLAIM FOR ATTORNEY'S FEES alleged ¶ 72.

3       d.   MINORS such other relief the Court deems just and proper.

4     2.   Solely against PRIVATE SUBCONTRACTOR DEFENDANTS, to MINORS

5          the appropriate measure of the EXEMPLARY DAMAGES as alleged in

6          paragraph 71.

7

8   B.  For Count 2's denial of due process in violation of the Art. 1, §7:

9     3.   Against COUNTY DEFENDANTS and PRIVATE SUBCONTRACTOR

10         DEFENDANTS, award:

11      a.   THREE SONS the PERSONAL INJURY DAMAGES; SERIOUS

12         EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND

13         NON-ECONOMICAL DAMAGES alleged in ¶¶ 66 through 68,

14         respectively.

15      b.   MINORS the WRONGFUL DEATH DAMAGES and SURVIVORSHIP

16         DAMAGES alleged in ¶¶ 69 through 70, respectively.

17      c.   MINORS the CLAIM FOR ATTORNEY'S FEES alleged ¶ 72.

18      d.   MINORS such other relief the Court deems just and proper.

19    4.   Solely against PRIVATE SUBCONTRACTOR DEFENDANTS, to MINORS

20         the appropriate measure of the EXEMPLARY DAMAGES as alleged in

21         paragraph 71.

22

23  C.  For Count 3's negligent failure to train in violation of § 1983:

24    1.   Against COUNTY DEFENDANTS and PRIVATE SUBCONTRACTOR

25         DEFENDANTS, award:

26      a.   THREE SONS the PERSONAL INJURY DAMAGES; SERIOUS

27         EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND

28         NON-ECONOMICAL DAMAGES alleged in ¶¶ 66 through 68,

respectively.

      b.  MINORS the WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES alleged in ¶¶ 69 through 70, respectively.

      c.  MINORS the CLAIM FOR ATTORNEY'S FEES alleged ¶ 72.

      d.  MINORS such other relief the Court deems just and proper.

2. Against PRIVATE SUBCONTRACTOR DEFENDANTS, to MINORS the appropriate measure of the EXEMPLARY DAMAGES alleged in paragraph 71.

d. For Count 4's negligent failure to train violation of § 1983:

1. Against COUNTY DEFENDANTS and PRIVATE SUBCONTRACTOR DEFENDANTS, award:

      a.  THREE SONS the PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMICAL DAMAGES alleged in ¶¶ 66 through 68, respectively.

      b.  MINORS the WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES alleged in ¶¶ 69 through 70, respectively.

      c.  MINORS the CLAIM FOR ATTORNEY'S FEES alleged ¶ 72.

      d.  MINORS such other relief the Court deems just and proper.

2. Against PRIVATE SUBCONTRACTOR DEFENDANTS, to MINORS the appropriate measure of the EXEMPLARY DAMAGES alleged in paragraph 71.

3. Against the STATE GOVERNMENTAL DEFENDANTS, injunctive and declaratory relief to require supervision over subordinate governments to protect the confidential information of the MINORS.

4. Against all of the defendants included in this Count, award MINORS their claim for ATTORNEY'S FEES alleged in ¶ 72 and such other relief as the Court deems just and proper.

Complaint for Equitable Relief and Damages

e.  For Count 5's sequestration denial of medical care in violation of § 1983:

    1.  Against COUNTY DEFENDANTS and PRIVATE SUBCONTRACTOR DEFENDANTS, award THREE SONS the PERSONAL INJURY DAMAGES as alleged in supra at paragraphs 66, 202, and 208.

    2.  Against PRIVATE SUBCONTRACTOR DEFENDANTS, to THREE SONS the appropriate measure of the EXEMPLARY DAMAGES alleged in paragraph 71 and 209.

    3.  Against GOVERNMENTAL DEFENDANTS and PRIVATE SUBCONTRACTOR DEFENDANTS, issue an order declaring that Defendants' actions and omissions as outlined violate law, setting forth MINOR'S rights; and setting forth defendants' obligations.

    4.  Against GOVERNMENTAL DEFENDANTS and PRIVATE SUBCONTRACTOR DEFENDANTS, award THREE SONS the injunctive relief necessary to cure the ongoing violation of rights and harms alleged in paragraphs 183 through 209, and that the Court Retain jurisdiction over these defendants, and their successors, until satisfied all violations no longer exist and will not recur.

    5.  Against GOVERNMENTAL DEFENDANTS and PRIVATE SUBCONTRACTOR DEFENDANTS, award THREE SONS their CLAIM FOR ATTORNEY'S FEES alleged in paragraphs 72 and 208, and such other relief as the Court deems just and proper.

II.  **For the First Cause of Action's claims of negligence, MINORS pray:**

  A.  For Count 1's general claim of negligence:

    1.  Against COUNTY GOVERNMENT DEFENDANTS; PRIVATE SUBCONTRACTORS DEFENDANTS; JULIO, SR.; AIDING AND ABETTING DEFENDANTS; and ABUSING DEFENDANTS, award:

      a.  PERSONAL INJURY DAMAGES as alleged at paragraphs 66, 202, and

208; and SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES, all as alleged supra at paragraph 68, respectively.

   b.  MINORS the WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES alleged in ¶¶ 69 through 70, respectively.

   c.  MINORS their costs of suit and such other relief as the Court deems just and proper.

B.  For Count 2's claim of negligent infliction of emotional distress:

   1.  Against COUNTY GOVERNMENT DEFENDANTS; PRIVATE SUBCONTRACTOR DEFENDANTS; AIDING AND ABETTING DEFENDANTS; and JULIO, award THREE SONS the SERIOUS EMOTIONAL DISTRESS DAMAGES alleged in ¶ 67.

   2.  Against all of the defendants included in this Count, award MINORS their costs of suit and such other relief as the Court deems just and proper.

C.  For Count 3's claim of premises liability against the SHELTER OWNING DEFENDANTS listed in ¶ 53, award:

   1.  THREE SONS the PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMICAL DAMAGES alleged in ¶¶ 66 through 68, respectively.

   2.  MINORS the WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES alleged in ¶¶ 69 and 70.

   3.  MINORS their costs of suit and such other relief as the Court deems just and proper.

D.  For Count 4's claim of premises liability against the REAL PROPERTY OWNER DEFENDANTS listed in ¶ 49, award:

   1.  THREE SONS the PERSONAL INJURY DAMAGES; SERIOUS

Complaint for Equitable Relief and Damages

EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND
NON-ECONOMICAL DAMAGES alleged in ¶¶ 66 through 68, respectively.

2.    MINORS the WRONGFUL DEATH DAMAGES and SURVIVORSHIP
DAMAGES alleged in ¶¶ 69 and 70.

3.    MINORS their costs of suit and such other relief as the Court deems just and
proper.

E.  For Count 5's claim of motor vehicle negligence against the REAL PROPERTY
DEFENDANTS listed in ¶¶ 61 and 62, award:

1.    THREE SONS the PERSONAL INJURY DAMAGES; SERIOUS
EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND
NON-ECONOMICAL DAMAGES alleged in ¶¶ 66 through 68, respectively.

2.    MINORS the WRONGFUL DEATH DAMAGES and SURVIVORSHIP
DAMAGES alleged in ¶¶ 69 and 70.

3.    MINORS their costs of suit and such other relief as the Court deems just and
proper.

F.  For Count 6's claim for negligent abuse, sequestration, and denial of medical care,
award:

1.    As against COUNTY GOVERNMENT DEFENDANTS; PRIVATE
SUBCONTRACTOR DEFENDANTS; and ABUSING DEFENDANTS, to
THREE SONS their PERSONAL INJURY DAMAGES; as alleged supra at
paragraphs 66, 202, and 208.

2.    MINORS their costs of suit and such other relief as the Court deems just and
proper.

G.  For Count 7's claim for gross negligence with deliberate indifference, MINORS
pray:

Complaint for Equitable Relief and Damages

1.  For all the relief sought against the specific defendants listed in the prayers for found Counts 1 through 6 of negligence, supra, which are hereby incorporated by reference, and as if fully restated hereafter in full.

2.  As against the private defendants in each of the respective causes of action and against their gross negligence and wanton conduct, the appropriate measure of exemplary damages as alleged in paragraphs 71, 182, and/or 209.

**III.  For the Third Cause of Action's wrongful death claims, MINORS pray:**

A.  As against WRONGFUL DEATH DEFENDANTS defined in paragraph 318, award MINORS the WRONGFUL DEATH DAMAGES and SURVIVORSHIP DAMAGES alleged in ¶¶ 69 and 70.

B.  As against PRIVATE CONTRACTOR DEFENDANTS, JULIO, SR.; AIDING AND ABETTING DEFENDANTS, award MINORS the appropriate measure of the EXEMPLARY DAMAGES alleged in paragraph 71 and 182.

C.  As against WRONGFUL DEATH DEFENDANTS, award MINORS their costs of suit and such other relief as the Court deems just and proper.

**IV.  For the Fourth Cause of Action's privacy violation claims, MINORS pray:**

A.  As against COUNTY DEFENDANTS; PRIVATE SUBCONTRACTOR DEFENDANTS; and ELENEZ, award:

a.  THREE SONS Recovery of actual damages, including, but not limited to, PERSONAL INJURY DAMAGES; SERIOUS EMOTIONAL DISTRESS DAMAGES; and SPECIAL ECONOMIC AND NON-ECONOMIC DAMAGES, all as alleged supra at paragraphs 66 through 68, and pursuant to Civil Code Sections 56.35 and 56.36 (b)(2).

b.  MINORS recovery of WRONGFUL DEATH DAMAGES, including, but not limited to, as alleged supra at paragraph 69, and pursuant to Civil Code Sections 56.35 and 56.36 (b)(2).

Complaint for Equitable Relief and Damages

  c. MINORS recovery of nominal damages of $1,000 under 56.35.

  d. Reasonable statutory attorney's fees attributable to this cause of action, only, and pursuant to Civil Code Section 56.35 of not less than $3,000.

  e. Costs of litigation pursuant to Id.

  f. Such other relief that the Court deems just and appropriate

 B. Punitive damages against PRIVATE SUBCONTRACTOR DEFENDANTS and ELENEZ of $3,000 pursuant to Id.

**V. For the Fifth Cause of Action's survivorship claims, MINORS pray:**

 a. Against COUNTY GOVERNMENT DEFENDANTS; PRIVATE SUBCONTRACTOR DEFENDANTS; AIDING AND ABETTING DEFENDANTS; and JULIO, award:

  a. MINORS the SURVIVORSHIP DAMAGES alleged in ¶ 70.

  b. MINORS their costs of suit and such other relief as the Court deems just and proper.

 b. Against PRIVATE SUBCONTRACTOR DEFENDANTS; AIDING AND ABETTING DEFENDANTS; and JULIO, award MINORS the appropriate measure of the EXEMPLARY DAMAGES alleged in paragraph 71.

**VI. For the Sixth Cause of Action and each of its various counts relating to fraudulent conveyance, MINORS pray:**

 1. A declaration that for all times relevant prior to the transfer from ALVARADO to AMANDA, JULIO, SR. was the true equitable owner and possessor of the SUBJECT RESIDENCE.

 2. A declaration that the transfers of the SUBJECT RESIDENCE from JULIO to ALVARADO; and RELATED DOES be set aside and declared void as to MINORS herein to the extent necessary to partially satisfy their claims, and in an amount not

less than the actual unencumbered value of the property, or 150,000, whichever is greater, and with interest thereon from THE DATE OF THE SUBJECT INCIDENT, and at ten percent (10%) percent per annum.

3.  That the SUBJECT RESIDENCE presently in the hands of CONSPIRING DEFENDANTS be attached in accordance with the provisions of Sections 481.010 through 493.060 of the Code of Civil Procedure.

4.  That CONSPIRING DEFENDANTS be restrained from disposing of the SUBJECT RESIDENCE transferred until payment of MINORS' claim is paid in full.

5.  That a temporary restraining order be granted MINORS enjoining and restraining CONSPIRING DEFENDANTS and their representatives, attorneys, and agents from selling, transferring, conveying, or otherwise disposing of the SUBJECT RESIDENCE or its proceeds.

6.  That an order pendente lite be granted MINORS enjoining and restraining CONSPIRING DEFENDANTS and their representatives, attorneys, and agents from selling, transferring, conveying, assigning, or otherwise disposing of any of the SUBJECT RESIDENCE or its proceeds.

7.  That the judgement herein be declared a lien on the property transferred.

8.  That order be made declaring that defendant JULIO holds all or a position of the interest in the SUBJECT RESIDENCE.

9.  For an order declaring that those of the CONSPIRING DEFENDANTS that hold the SUBJECT RESIDENCE presently do so in trust for the benefit of the MINORS.

10. For an order requiring CONSPIRING DEFENDANTS to account for all profits and proceeds earned from or taken in exchange for the SUBJECT RESIDENCE.

11. For an order awarding MINORS their reasonable attorney's fees, litigation expenses and costs if recoverable as damages or at law. And,

12. On Counts 3 and 4, for an order issue awarding general, special, and exemplary damages according to proof.

13. For an order awarding such further relief as the Court deems just and proper.

Complaint for Equitable Relief and Damages

1   Dated: July 13, 2022               GENE A. FARBER, ESQ.
Law Offices of Gene A. Farber

2

TIMOTHY S. THIMESCH, ESQ.

3                                  Thimesch Law Office, PLC

4                               /s/ Authorized signed – Gene A. Farber

5                               Attorneys for PLAINTIFF KEITH TROUT,
as the proposed guardian ad litem for DA; JG1; JG2;

6                               and JG3

7

8                        **<u>DEMAND FOR JURY TRIAL</u>**

9       On behalf of the MINORS, Plaintiff hereby renews the demand for a jury on all claims in

10  which a jury trial may be had.

11

12  Dated: July 13, 2022               /s/ Authorized signed – Gene A. Farber

13                               Attorneys for PLAINTIFF KEITH TROUT,
as the proposed guardian ad litem for DA; JG1; JG2;

14                             and JG3

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Equitable Relief and Damages

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS